No. 89,077

# In the Matter of T.S.
(74 P.3d 1009)

Opinion filed August 22, 2003.

*Gregory A. Schwartz*, of Glassman, Bird & Braun, L.L.P., of Hays, argued the cause and was on the brief for appellant natural mother.

*Thomas J. Drees*, county attorney, argued the cause and was on the brief for appellee State of Kansas.

*John C. Herman*, of Hays, argued the cause and was on the brief for appellee natural father.

The opinion of the court was delivered by

BRAZIL, S.J.: This is a child in need of care case involving one of two children removed from the home of the natural mother (Mother) after the death of a third sibling. Mother of T.S., appeals from the district court's order placing T.S. in the custody of his natural father, J.W. The State of Kansas and J.W. filed appellee briefs. The court transferred the case from the Court of Appeals pursuant to K.S.A. 20-3018(c)

We affirm.

Mother was the natural mother of three children, M.S., T.S., and D.S. in order of birth. Each child has a different father. J.W. is the natural father of T.S., who was born on June 19, 1998.

The night of April 4, 2001, Mother placed D.S., who was 14 months old, in her crib near a space heater. Mother took her prescription drug, Hydrocodone, before going to bed and did not check on D.S. during the night. The next morning, Mother found D.S. dead of hyperthermia. T.S. was 2 years old at the time.

On the day that D.S. was found dead, Mother's residence was very cluttered and in extreme disarray. There were piles of clothing everywhere, food and debris on the floor, "junk and stuff laying around," and feces on the bathroom floor. Mother was at a hospital in a hysterical condition and was unable to care for her surviving children.

Upon the State's petitions, the district court ordered M.S. and T.S. to be placed in the protective custody of the Secretary of Social and Rehabilitation Services (SRS). At the detention hearing on April 13, 2001, J.W. appeared in person and by counsel. With the agreement of counsel, the district court ordered that the children were to remain in the custody of SRS, with a strong recommen-

dation that M.S. be placed with the maternal grandmother, L.T., as soon as possible, and granted a request for T.S. to be placed with L.T. According to Mother, L.T. later was allowed to adopt M.S.

Adjudication first was scheduled for June 28-29, 2001. At Mother's request, it was continued from June to November 2001. Then the district court continued it again until after disposition of the criminal charges against Mother.

Mother was charged with both involuntary manslaughter and endangering a child in the death of D.S. In October 2001, she stipulated to the circumstances of D.S.'s death and entered into a diversion agreement on the manslaughter count. She pled no contest to endangering a child, a misdemeanor, and was placed on 24 months' probation. Mother was required by the terms of her probation and the diversion agreement to comply with any SRS reintegration plan adopted by the district court in the child in need of care case.

When the adjudication hearing in the child in need of care case was held in January 2002, all parties stipulated that T.S. was a child in need of care and agreed to proceed with disposition.

After hearing the testimony, the district court announced its ruling on the record. Finding that placing T.S. in Mother's custody would not ensure the child's well-being and that placing him with J.W. would do so, the district court terminated T.S.'s placement with SRS and ruled in J.W.'s favor. With regard to the governing statutes, the district court stated:

"Counsel, these statutes are troublesome. We talked about it at the pretrial. I run into it about every time we have a—a case in which parents contend over the custody of a child. . . .

"If you look at K.S.A. 38-1562, and 1563, and the statutes that precede them, you will find generally reference to reintegration. It does not say reintegration with somebody or to a specific place.

"The only place that becomes specific is K.S.A. 38-1565, which is actually the first statute that talks about if we have a disposition and the child is taken away from whatever, how do we integrate it—reintegrate the child into whatever. And that says reintegration into the family.

. . . .

"The statute actually says, 'If a child is placed outside the child's home and no permanency plan is made a part of the record of the dispositional hearing, a written permanency plan shall be prepared which provides for reintegration of the child into the child's family.'

"If I go back over to K.S.A. [3]8-1563, which is what I am authorized to do in the disposition hearing, I am authorized under (a) to place the child in the custody of the child's parent.

"Now, the use of the singular there is once again misleading. And—and I wish the legislature would have found some other way to say it. But this child has more than one parent. He has two parents. So, one of the things I can do is retain jurisdiction . . . and place the child in the—in the custody of a parent. And I can do certain other things, but I don't address that right now, I'd rather skip down to (d), where it says, 'If the Court finds that placing'—now incidentally, this (d) is the only time, if these—if these conditions are met, and only if these conditions are met, that the Court can place the child with the secretary of SRS. That's what's been drilled into our heads over the last 18 months about AFSA and so on and so forth.

"These are the conditions. 'If the Court finds that placing the child in the custody of a parent will not assure protection from physical, mental, et cetera, abuse,' if I find that placing the child in the custody of a parent will not assure these things, then I can place the child in the custody of a—of the secretary.

"Well, I don't find today that placing the child with a parent will not assure that child's well-being, to sum up those list of words into one word, which I will say is well-being. I don't find that placing the child with a parent will not assure well-being. Placing the child with a parent will assure us of well-being and that parent is the child's father. And that's what basically everybody has testified here to today, except for [Mother], who basically said that she didn't think that [J.W.] was all that interested as much as his mother was in the child, but I don't find that to be any warning sign about the well-being of the child if placed with [J.W.].

"So basically (d) will not allow me to place that child with the secretary. It's just that simple. I will retain jurisdiction, and I will hear from counsel about the second part of (a), which says, the Court may prescribe certain things to assure proper care and protection of the child, including supervision of the child and the parent by a Court Services Officer, which is not going to be a viable alternative here; or may order the child and the parent to participate in programs operated by the secretary of another appropriate individual or agency. The terms and conditions may require any special treatment or care which the child needs for the child's physical, mental or emotional health. So I need to hear from counsel and get some help along those lines.

"But the Court finds that (d) will not allow me to do much else than place the child with [J.W.], primary—one other comment I should make is, I prefer, and have always said, that I prefer having the child placed back into the home from which the child came. But in this particular case, the evidence which I have heard

will not allow me to find that placing the child with [Mother] will assure the child's well-being. And I so find."

On April 26, 2002, the judge conducted a hearing to address the issue of visitation. At the hearing, Mother asked the court for the continuation of visitation every two weeks. The court ordered visitation with the natural mother every other weekend with drop-in checks by CASA during the visits.

Mother has appealed the March 29, 2002, judgment and the April 26, 2002, visitation order of the court.

Mother contends that the trial court failed to make a ruling on whether reintegration into her home was a viable option before disposition as required by K.S.A. 38-1562(c). She asks this court to reverse the decision of the trial court and remand the case for further proceedings.

"The same standard of appellate review that is applicable for termination of parental rights in an adoption proceeding is applicable . . . . To terminate parental rights in an adoption proceeding, the duty of an appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the trial court's findings. An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. It must review the evidence in the light most favorable to the party prevailing below. [Citations omitted.] . . . .

. . . .

" '. . . [I]t is not our province to usurp the court's fact-finding function and reweigh the total evidence adduced.' The applicable scope of review for the appellate courts in a termination of parental rights case is not whether the record contains substantial competent evidence of a clear and convincing nature but whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that parental rights should be terminated." *In re S.M.Q.*, 247 Kan. 231, 234, 240, 796 P.2d 543 (1990).

Mother argues that under K.S.A. 38-1562(c), the trial court is required to make a determination at the dispositional hearing as to whether reunification is a viable alternative before turning to the authorized dispositions listed under K.S.A. 38-1563.

The State takes the position that the trial court need not consider reintegration unless the court cannot place the child in the custody of the noncustodial parent. The State asserts that the authorized

disposition statute, K.S.A. 38-1563, gives the court the option of changing residential custody of the child to the noncustodial parent before the court need consider the possibility of reintegration into the home from whence the child was removed. It takes the position that only if the court cannot place the child with a parent does the court have to consider reintegration before disposition.

J.W. contends that by placing T.S. in the custody of his natural father, the trial court in fact determined that the reunification of T.S. with his family was a viable and appropriate alternative under the provisions of the Kansas Code for Care of Children (KCCC). J.W. suggests that this court read the KCCC statutes *in pari materia* with the Adoption and Safe Families Act of 1997 (42 U.S.C. § 670 *et seq.* [2000]) and rule that one purpose of the KCCC is the reunification of a child with one or both parents when the same is demonstrated to be in the child's best interest.

For purposes of analysis, the issue here may be divided into two parts: (1) whether K.S.A. 38-1562(c) requires the trial court to determine whether returning the child to the home from which he or she was removed is a viable option before placing the child with the noncustodial parent who wishes to assume custody; and (2) if so, whether the trial court ruled on whether reintegration into Mother's home was a viable option before disposition.

Our analysis requires the interpretation of provisions of the KCCC. Interpretation of a statute is a question of law, and the appellate court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). Our interpretation is guided by K.S.A. 38-1501, which provides in part:

"K.S.A. 38-1501 through 38-1593 shall be known as and may be cited as the Kansas code for care of children and shall be liberally construed, to the end that each child within its provisions shall receive the care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state."

Under the KCCC, if the court finds that the child is a child in need of care, K.S.A. 38-1556 mandates that "the court shall enter an order adjudicating the child to be a child in need of care," and states that the court "may proceed to enter orders of disposition

as authorized by this code." Here, the parties stipulated that T.S. was a child in need of care.

The provision cited by Mother, 38-1562(c), states:

"Prior to entering an order of disposition, the court shall give consideration to the child's physical, mental and emotional condition; the child's need for assistance; the manner in which the parent participated in the abuse, neglect or abandonment of the child; any relevant information from the intake and assessment process; and the evidence received at the dispositional hearing. *In determining when reunification is a viable alternative, the court shall specifically consider whether the parent has been found by a court to have*: (1) Committed murder in the first degree, . . . murder in the second degree, . . . capital murder, . . . voluntary manslaughter, . . . or violated a law of another state which prohibits such murder or manslaughter of a child; (2) aided or abetted, attempted, conspired or solicited to commit such murder or voluntary manslaughter of a child . . .; (3) committed a felony battery that resulted in bodily injury to the child or another child; (4) subjected the child or another child to aggravated circumstances as defined in K.S.A. 38-1502 and amendments thereto; (5) parental rights of the parent to another child have been terminated involuntarily; or (6) the child has been in extended out of home placement . . . . *If reintegration is not a viable alternative,* the court shall consider whether a compelling reason has been documented in the case plan to find neither adoption nor permanent guardianship are in the best interests of the child, the child is in a stable placement with a relative, or services set out in the case plan necessary for the safe return of the child have been made available to the parent with whom reintegration is planned. *If reintegration is not a viable alternative and either adoption or permanent guardianship might be in the best interests of the child*, the county or district attorney . . . shall file a motion to terminate parental rights or a motion to establish permanent guardianship within 30 days . . . . No such hearing is required when the parents voluntarily relinquish parental rights or agree to appointment of a permanent guardian." (Emphasis added.)

The term "parent" is defined in the KCCC as "a guardian, conservator and every person who is by law liable to maintain, care for or support the child." K.S.A. 38-1502(d). The phrase "aggravated circumstances" includes chronic abuse and life threatening neglect of a child. K.S.A. 38-1502(x). " 'Custody,' whether temporary, protective or legal, means the status created by court order or statute which vests in a custodian, whether an individual or an agency, the right to physical possession of the child and the right to determine placement of the child, subject to restrictions placed by the court."

K.S.A. 38-1502(m). The KCCC does not define terms "reunification" or "reintegration," however.

"Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. [Citation omitted.]" *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

Webster's Ninth New Collegiate Dictionary 993 (1991) defines "reintegrate" as "to integrate again into an entity"; or to "restore to unity." "Reunification," is defined to mean "to restore unity to." Webster's, at 1008. The root words of the terms are integrate and unify. "Integrate" is defined as "to form, coordinate, or blend into a functioning or unified whole," or "to unite with something else." Webster's, at 628. "Unify" is defined as "to make into a unit or a coherent whole." Webster's, at 1290.

If we adopt a liberal interpretation of 38-1562(c), we could approve J.W.'s proposition that, by placing T.S. in the custody of his natural father, the trial court in fact determined that the reunification of T.S. with his family was a viable and appropriate alternative under the provisions of the KCCC.

Or, if we determine that the meaning of 38-1562(c) cannot be ascertained through a review of its language alone, we must then turn to the other provisions of the KCCC, the purpose of the statute, and the effect of different interpretations.

"If the meaning of the statute cannot be determined by looking at the plain and unambiguous language, then we may 'look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested.' [Citation omitted.]" *American Trust Administrators, Inc. v. Kansas Insurance Dept.*, 273 Kan. 694, 700, 44 P.3d 1253 (2002).

"Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted. [Citation omitted.]" *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

K.S.A 38-1563 provides, in relevant part:

"(a) After consideration of any evidence offered relating to disposition, the court may retain jurisdiction and place the child in the custody of the child's parent subject to terms and conditions which the court prescribes to assure the proper care and protection of the child, including supervision of the child and the parent by a court services officer, or may order the child and the parent to participate in programs operated by the secretary or another appropriate individual or agency. The terms and conditions may require any special treatment or care which the child needs for the child's physical, mental or emotional health.

. . . .

"(d) *If the court finds that placing the child in the custody of a parent will not assure protection from physical, mental or emotional abuse or neglect or sexual abuse or is contrary to the welfare of the child or that placement would be in the best interests of the child, the court shall enter an order awarding custody of the child, until the further order of the court, to one of the following*:

(1) *A relative of the child* or a person with whom the child has close emotional ties;

(2) any other suitable person;

(3) a shelter facility; or

(4) the secretary.

"If the child is adjudged to be a child in need of care, the court shall not place the child in the custody of the secretary if the court has received from the secretary, written documentation of the services and/or community services plan offered or delivered to prevent the need for such custody unless the court finds that the services documented by the secretary are insufficient to protect the safety of the child and that being in the custody of the parent with such services in place is contrary to the welfare or that placement is in the best interests of the child. The court shall have the authority to require any person or entity agreeing to participate in the plan to perform as set out in the plan. The secretary shall present to the court in writing the specific actions taken to maintain the family unit and prevent the unnecessary removal of the child from the child's home.

"*In making such a custody order, the court shall give preference, to the extent that the court finds it is in the best interests of the child, first to granting custody to a relative of the child* and second to granting custody of the child to a person with whom the child has close emotional ties. If the court has awarded legal custody based on the finding specified by this subsection, the legal custodian shall not return the child to the home of that parent without the written consent of the court.

. . . . .

"(h) *The court shall not enter an order removing a child from the custody of a parent pursuant to this section unless the court first finds from evidence presented by the petitioner that reasonable efforts have been made to maintain the family unit and prevent the unnecessary removal of the child from the child's home or that reasonable efforts are not necessary because reintegration is not a viable alternative; or that an emergency exists which threatens the safety of the child and*

*that allowing the child to remain in the home is contrary to the welfare of the child or that placement would be in the best interest of the child. . . ."* (Emphasis added.)

In this case, the trial judge discussed the requirements of K.S.A. 38-1563 and stated:

"[T]he Court finds that [38-1563](d) will not allow me to do much else than place the child with [J.W.], primary—one other comment I should make is, I prefer, and have always said, that I prefer having the child placed back into the home from which the child came. But in this particular case, the evidence which I have heard will not allow me to find that placing the child with [Mother] will assure the child's well-being. And I so find."

The KCCC expressly places importance on the maintenance of the child's relationship with family members who can provide "care, custody, guidance, control and discipline, preferably in the child's own home." K.S.A. 38-1501. Its provisions additionally value the goal of "prevent[ing] the unnecessary removal of the child from the child's home." K.S.A. 38-1563(d). The KCCC recognizes that maintaining the child's relationship with his or her family is important to the child's well-being and, thus, is in the best interest of the child. In addition, the KCCC expresses a preference for keeping the child in his or her own home, if possible. The statutory provisions of the KCCC further recognize that placing the child in the custody of the State should be the last option considered. See K.S.A. 38-1563(d).

This court has previously stated:

"After a child has been adjudicated a child in need of care and the court is considering termination of parental rights, the court shall give primary consideration to the physical, mental, or emotional conditions and needs of the child. The interplay between the child's best interests and parental rights is the difficult balancing task the court must perform when deciding whether or not to terminate parental rights." *In re S.M.Q.*, 247 Kan. at 240.

Courts must balance the fundamental constitutional right of parents to the care, custody, and control of their children with the State's need to ensure the protection and welfare of children. While the best interests of the child must be given appropriate weight, the rights of the parent must prevail absent a showing the parent is unfit or that highly unusual circumstances mandate the

State's exercise of its parens patriae powers. *In re M.M.L.*, 258 Kan. 254, 268, 900 P.2d 813 (1995).

Read together *in pari materia*, the provisions of 38-1556, 38-1562(c), and 38-1563(d) and (h) do not mandate that the trial court make a determination at the dispositional hearing as to whether reunification or reintegration with one parent is a viable alternative before placing the child with the noncustodial parent who wishes to assume custody. Under the authorized disposition listed in 38-1563(a), the court may "retain jurisdiction and place the child in the custody of the child's parent subject to terms and conditions which the court prescribes to assure the proper care and protection of the child . . . ." That provision would appear to allow the placement of the child in the custody of the formerly noncustodial parent (J.W.)

Additionally, under the language of 38-1556 and 38-1563(h), the trial court is authorized to enter orders of disposition under several alternative circumstances. The trial court is expressly authorized to enter an order removing T.S. from Mother's custody if, among other things, it found "that an emergency exists which threatens the safety of the child and that allowing the child to remain in the home is contrary to the welfare of the child." K.S.A. 38-1563(h).

Further, K.S.A. 38-1563(d) provides that if the court finds that placing the child in the custody of "a parent" will not assure protection from abuse or neglect or is contrary to the welfare of the child, the court shall enter an order awarding custody of the child to one of several enumerated entities. K.S.A. 38-1563(d) indicates that the trial court should follow a preferential order in awarding custody of the child, favoring (in order of preference): (1) a parent; (2) a relative of the child or a person with whom the child has close emotional ties; (3) any other suitable person; (4) a shelter facility; or (5) the secretary. Liberally interpreted, subsection (d) suggests that the court must look first to place the child in the custody of "a parent" before awarding custody to any other potential care givers. Moreover, this provision would appear to allow the placement of a child in the custody of the formerly noncustodial parent by using the term "relative." K.S.A. 38-1563(d)(1).

In sum, we conclude that the provisions of the KCCC did not require the trial court to determine whether reintegration with Mother was a viable alternative before entering its order of disposition in this case. We interpret 38-1562(c) and 38-1563 to give the court the option of placing a child in need of care with a noncustodial parent who wishes to assume custody before the court need consider the possibility of reintegration into the home from which the child was removed, to the extent that it finds such a change in custody is in the best interest of the child. Having reached this conclusion, we need not consider whether the trial court erred by failing to make a ruling on whether reintegration into Mother's home was a viable option. Thus, Mother's contention that the trial court erred by failing to consider whether reintegration into her home was a viable option before disposition under K.S.A. 38-1562(c) fails.

Next, Mother argues that the trial court failed to make the reasonable effort findings required under K.S.A. 38-1563(h) and 42 U.S.C. § 671(a)(15) (2000), of the Adoption and Safe Families Act of 1997.

Mother's assertion involves the interpretation of a statute.

"Interpretation of a statute is a question of law in which appellate review is unlimited. Legislative intent is to be determined from a general consideration of an entire act. To the extent possible, the court should attempt to reconcile different provisions so as to make them consistent, harmonious, and sensible. It is presumed that the legislature intended that its enactments are to be given a reasonable construction, so as to avoid unreasonable results." *In re Marriage of Phillips*, 272 Kan. 202, Syl. ¶ 1, 32 P.3d 1128 (2001).

Without framing any specific contentions or citing case law, Mother argues that the trial court's failure to make the finding negatively affected and prejudiced her by denying her right to due process.

At the disposition hearing, Mother argued that K.S.A. 38-1565 required reasonable efforts to reintegrate the child into the home from which he or she was taken. Mother also maintained that the trial court had to make a finding that SRS had made reasonable efforts to reintegrate the child into the home. Mother did not raise

a due process argument before the trial court, or allege that her due process rights were prejudiced.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, 650, 16 P.3d 962 (2001).

Mother attempts to raise claims of denial of due process for the first time on appeal. None of the parties have briefed the due process argument, and we decline to address it.

Mother was not entitled under 38-1563(h) to a court finding that reasonable efforts were made to prevent the unnecessary removal of the child from the child's home before placing T.S. in the custody of his natural father. Under our construction of K.S.A. 38-1563(a), (d), and (h), the trial court was allowed to place T.S. in the custody of his natural father without first entering a finding of "reasonable efforts."

For her final assertion of error, Mother contends that the trial court misinterpreted K.S.A. 38-1563 when it gave custody of T.S. to his natural father. She asks this court to remand this matter to the trial court with orders requiring the preparation of a written reintegration plan.

"Interpretation of a statute is a question of law. An appellate court's review of questions of law is unlimited." *Unwitting Victim v. C.S.*, 273 Kan. 937, Syl. ¶ 1, 47 P.3d 392 (2002).

Mother first contends that the trial court failed to make the necessary finding of fact under K.S.A. 38-1562(c) and 38-1565(a) that reintegration with the natural mother was not a viable alternative. This contention has been addressed above.

Next, Mother argues that 38-1565(a) requires the trial court to order the preparation and submission of a reintegration plan for returning the child to her home. She states that it cannot be argued that T.S.'s home was with anyone other than the natural mother since he resided with her for his entire life. Mother believes that even if this court determines that 38-1565(a) stands for the proposition that T.S. may be reintegrated into the family by placement with the natural father, the trial court was still required to have a written reintegration plan prepared.

K.S.A. 38-1565(a) states, in applicable part:

"If a child is placed outside the child's home and no permanency plan is made a part of the record of the dispositional hearing, a written permanency plan shall be prepared which provides for reintegration of the child into the child's family or, if reintegration is not a viable alternative, for other permanent placement of the child. Reintegration may not be a viable alternative when the: (1) Parent has been found by a court to have committed murder in the first degree . . . . If the permanency goal is reintegration into the family, the permanency plan shall include measurable objectives and time schedules for reintegration. The plan shall be submitted to the court not later than 30 days after the dispositional order is entered. If the child is placed in the custody of the secretary, the plan shall be prepared and submitted by the secretary. If the child is placed in the custody of a facility or person other than the secretary, the plan shall be prepared and submitted by a court services officer."

The trial court found that the only provision in the KCCC that specifically discussed reintegration was K.S.A. 38-1565, which refers to "reintegration into the family." After placing the custody of T.S. with J.W., the court considered long-term monitoring of the child in the State of Missouri.

Because we have interpreted 38-1563 as giving the trial court the option of placing a child in need of care with a noncustodial parent who wishes to assume custody before the court need consider the possibility of reintegration into the home from which the child was removed when a change in custody is in the best interest of the child, a reintegration plan for returning T.S. to Mother's home was not necessary.

We interpret the phrase "the child's home" in K.S.A. 38-1565(a) to include the home of the noncustodial parent. Thus, the trial court was not required to order the preparation of a written permanency plan.

Affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.