(116 P.3d 43)
No. 93,551

In the Interest of S.R., Date of Birth 02/13/89, and R.R., Date of Birth 04/26/90.

Opinion filed July 29, 2005.

*Hatem B. Chahine,* of Overland Park, for appellant natural father.

*Steven J. Obermeier* and *Donald W. Hymer, Jr.*, assistant district attorneys, and *Nancy F. Orrick,* guardian ad litem, for appellee.

Before MALONE, P.J., GREEN and BUSER, JJ.

GREEN, J.: D.R. appeals the trial court's decision terminating his parental rights in S.R. (date of birth 02/13/89) and R.R. (date of birth 04/26/90). The first issue raised by D.R. on appeal is whether the State exercised due diligence in obtaining service of process on D.R. The record on appeal indicates that there was never a finding, as required by K.S.A. 38-1582(b)(3), that due diligence had been exercised in obtaining service of process on D.R. In addition, the record indicates that the State received an address for D.R. but never attempted to serve him at that address. As a result, we determine that the due diligence requirement of K.S.A. 38-1582(c) has not been met. Moreover, we determine that the trial court abused its discretion in denying D.R.'s motion to continue the trial date. Although D.R. had actual notice of the proceedings, the record on appeal indicates that he did not have sufficient time to prepare his defense to the State's petition. Accordingly, we reverse and remand.

This case commenced in April 2004 when the State filed a petition requesting termination of the parental rights of D.R. and D.A. in their natural children S.R. and R.R. The petition stated that S.R. and R.R. had been removed from D.R.'s home in October 2000 due to D.R.'s physical abuse of R.R. S.R. and R.R. had been placed in the custody of their paternal grandparents, J.R. and C.R. The petition indicated that a reintegration plan was attempted but, in December 2001, the trial court determined that D.R. had substantially failed to comply with the plan. In May 2002, with D.R.'s and D.A.'s consent, J.R. and C.R. became the permanent guardians of S.R. and R.R. The petition asserted, however, that D.R. continued to harass both children through telephone contact. The petition indicated that J.R. and C.R. wished to formally adopt the children.

After being served with the petition and notice, D.A. agreed to relinquish her parental rights to R.R. and consented to S.R.'s adoption. A copy of the petition and notice was sent to the paternal grandparents. Certified mail, restricted delivery service was attempted on D.R. at a post office box in Las Vegas but was returned

with the notation "BOX CLOSED NO ORD." In addition, certified mail, restricted delivery service was attempted on D.R. at a street address in Las Vegas but was returned as "Unclaimed Refused."

The State submitted to the trial court an affidavit from the assistant district attorney who stated that all reasonable and diligent efforts had been made to locate D.R. In the affidavit, the State indicated that child support records had been checked in Johnson County, that a copy of the notice and petition had been sent to D.R.'s last known address but had been returned as undeliverable, that an Internet search on www.anywho.com and www.yahoo.com, had been conducted for both the Kansas City metropolitan area and Las Vegas, and that a phone call had been placed to the one match that turned up during the internet search, but it was discovered that D.R. did not reside at that residence. The State further indicated that SRS had not provided any additional information.

After considering the State's affidavit, the trial court ordered that D.R. be served with notice by publication. Notice of an August 11, 2004, hearing on the petition to terminate parental rights was published in The Olathe News on July 21, 2004, and July 28, 2004.

On August 5, 2004, six days before the scheduled hearing, D.R.'s appointed counsel moved to continue the trial date. According to D.R.'s counsel, he had spoken with D.R. several times over the past few weeks. D.R. had provided his counsel with a telephone number but had advised his counsel not to give the number to anyone else. In addition, D.R. did not disclose his residential address to his counsel. D.R. had previously expressed to the trial court that he wished to have new counsel. D.R.'s counsel alleged that he had contacted D.R. on August 4 and told him that the State had achieved publication service. At that time, D.R. told his counsel that he could not afford airline tickets and that he was unable to take time off of work without losing his job. D.R.'s counsel asserted that under the circumstances, he could not provide an adequate defense of D.R.'s interests. D.R.'s counsel requested that the trial be rescheduled for a future date.

At the August 11 trial date, the trial court addressed the motion for continuance filed by D.R.'s counsel. The trial court questioned whether service had been completed on D.R. At the hearing, the State produced a letter from D.R. which indicated that he had received actual notice of the trial. This letter has not been included in the record on appeal. Apparently, in this letter D.R. revealed an address in Mesquite, Nevada, and said that he would be in Kansas in October 2004. The State pointed out that this was the first communication in which D.R. had disclosed his address. The State pointed out that in a previous phone call, D.R. had not given his address. The State questioned the accuracy of the address and also whether D.R. would even sign a return receipt if the address was accurate.

During the hearing, D.R.'s counsel objected to the publication service. The trial court then questioned whether service was sufficient under the facts of the case. The trial court noted that there had not been personal service or restricted mail service on D.R. Both D.A.'s attorney and the guardian ad litem indicated that D.R. was playing games with the court and that he would be arrested for failure to pay child support if he came back into Kansas. Pointing out that there must be due diligence before service by publication can be ordered, the State argued that it had satisfied due diligence in this case and that it had protected D.R.'s due process rights by the notice that was provided.

In determining that the notice given to D.R. was sufficient in this case, the trial judge stated: "I think the notice that we've given is sufficient. He appears to submit to the jurisdiction by publication and actual notice. That the Court does at least have in rem jurisdiction over his status as parent of these two children, so we'll proceed jurisdictionally." The trial court pointed out that D.R. had known about the proceedings. The trial court denied the request for a continuance.

The trial court then conducted a trial on the State's petition to terminate parental rights. The trial court heard testimony from both J.R. and C.R., as well as Carrie Massey, R.R.'s case manager with the Farm, Inc. In an August 12, 2004, letter decision, the trial court found clear and convincing evidence that D.R. was unfit and

that his unfitness was unlikely to change in the foreseeable future. D.R.'s and D.A.'s parental rights were terminated in November 2004.

*Service of Process*

The first issue before this court is whether the State exercised due diligence in obtaining service of process upon D.R. This issue requires interpretation of various statutory provisions. "Interpretation of a statute is a question of law, and the appellate court's review is unlimited. [Citation omitted.]" *In re T.S.*, 276 Kan. 282, 287, 74 P.3d 1009 (2003).

K.S.A. 38-1582(c) allows service by publication upon the parent in a termination of parental rights proceeding when the parent cannot be located by the exercise of due diligence. K.S.A. 38-1582(c) states:

"In any case in which a parent of a child cannot be located by the exercise of due diligence, service shall be made upon the child's nearest blood relative who can be located and upon the person with whom the child resides. Service by publication shall be ordered upon the parent."

Before commencing the hearing on a motion to terminate parental rights, the trial court "shall determine that due diligence has been used in determining the identity of the interested parties and in accomplishing service of process." K.S.A. 38-1582(b)(3). This statute requires the trial court to state specific facts showing reasonable diligence was exercised to locate the absent parent. Here, before the commencement of the termination of parental rights hearing, the trial court made no factual findings that due diligence had been used in locating D.R. and in accomplishing service of process.

The State concedes that it received a letter from D.R. and that the letter contained his address in Mesquite, Nevada. Although the State questions the accuracy of the address, the State never attempted to obtain service of D.R. at that address. See *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950) (Although the Court upheld notice by publication because it was impractical to give better notice to some beneficiaries, it struck down the notice as a violation of due process when the

names and addresses of other beneficiaries were known.); *In re Woodard*, 231 Kan. 544, Syl. ¶ 7, 646 P.2d 1105 (1982) (if petitioner in termination of parental rights action knows whereabouts of absent parent, service of summons must be obtained by one of the ways specified by statute, other than by publication, so that parent may receive actual notice of proceeding). After receiving D.R.'s address in Nevada, the State should have attempted to serve him by one of the methods outlined in K.S.A. 38-1534 instead of relying on the notice that was published in a Kansas newspaper to effect service of process.

In summary, publication service on a parent in a termination of parental rights case under K.S.A. 38-1582(c) is permitted only when the parent cannot be located by the exercise of due diligence. Here, the State had a letter from D.R. that contained his address in Mesquite, Nevada; however, the State never attempted to obtain service of D.R. at that address. When constructive service such as publication notice is used, there must be strict compliance with the requisite statutory procedures.

The trial court seems to rely heavily on the fact that D.R. received actual notice of the proceedings. In *In re L.S.*, 14 Kan. App. 2d 261, 262, 788 P.2d 875 (1990), this court noted: "[J]urisdiction over the person of the defendant can be acquired only by issuance and service of process in the method prescribed by statute, or by voluntary appearance.' [Citation omitted.]" Thus, Kansas law indicates that actual notice does not cure jurisdictional defects in the issuance and service of process. See *In re H.C.*, 23 Kan. App. 2d 955, 958, 939 P.2d 937 (1997) (Personal jurisdiction over the defendant can be obtained only through compliance with the statutory procedure regarding issuance and service of process, or through voluntary appearance.); *Wilson & Walker v. State*, 230 Kan. 49, 630 P.2d 1102 (1988) (In a child termination case, oral notice of the severance hearing was inadequate to comply with one of the statutorily provided ways of effecting service of process.). Here, the State has failed to satisfy the due diligence requirement of K.S.A. 38-1582(c) before seeking publication notice on D.R.

*Reasonable Time to Appear and to Defend*

Assuming arguendo that service by publication was sufficient to acquire jurisdiction over D.R., due process requires a reasonable time for D.R. to appear and to defend. In this case, both the assistant district attorney and the trial court seemed to focus on the fact that D.R. had actual notice of the proceedings. In denying the motion for a continuance filed by D.R.'s counsel, the trial court noted that the court appeared to have acquired jurisdiction over D.R. by publication and actual notice.

The only date of actual notice found in the record is contained in the motion for continuance which states that D.R. was informed by his counsel on August 4 that the State had achieved publication service. Although the motion for continuance stated that D.R.'s counsel had spoken on the phone with D.R. several times over the past few weeks, we cannot assume that he had told D.R. of the specific hearing date. The only date that we know for sure on which D.R. received actual notice of the hearing was August 4. This was only 1 week before the termination hearing. When D.R. received notice on August 4 of the hearing, he told his counsel that he could not take time off from his job or afford airline tickets for the upcoming trial. The next day, D.R.'s counsel moved for a continuance and later at trial objected to the service by publication.

In *In re H.C.*, 23 Kan. App. 2d 955, this court reversed the order terminating parental rights due to the trial court's failure to grant the mother a reasonable continuance where she had received actual notice of the hearing date approximately 1 week before trial. In that case, notice of the hearing had been sent to the mother in care of her attorney, and her attorney had informed her of the hearing date. The mother timely objected to service of process and also asked for a continuance, arguing that she was unable to secure witnesses and documents necessary for her defense. The mother testified that she could not retrieve psychiatric medical records due to the inadequate notice. Additionally, in her appeal brief, the mother argued that she was unable to subpoena two former caseworkers who had been involved in her case.

On appeal, in addressing the issue regarding improper service of process, this court noted that the trial court retained personal

jurisdiction over the mother because the original motion to terminate parental rights had been served in accordance with the statute. This court then addressed the question of whether the notice of hearing served on the mother's counsel comported with due process. This court noted that the mother had received actual notice of the hearing and therefore had been informed of the pendency of the action in accordance with due process. Nevertheless, this court stated that "[d]ue process also demands that interested parties be afforded an opportunity to present their objections, which includes a reasonable time to prepare a defense to the litigation." 23 Kan. App. 2d at 961. Determining that a reasonable continuance would have given the mother adequate time to prepare her defense, this court found that the trial court abused its discretion in denying the mother's timely request for a continuance and reversed the order terminating parental rights. 23 Kan. App. 2d at 960-61.

Similar to the facts of *In re H.C.*, the record in the instant case indicates that D.R. received actual notice of the termination of parental rights hearing 1 week before the trial date. Moreover, publication service was effected approximately 2 weeks before trial. D.R.'s attorney timely requested a continuance and objected to the service of process. D.R. was living out-of-state in Nevada at the time he received notice of the hearing. The record fails to indicate that D.R. had been given enough time to allow him an adequate opportunity to meet with his attorney and prepare his defense.

We determine that the time period of 1 week between the notice and the trial was insufficient for D.R., who was living in Nevada, to prepare his defense. See *Robins v. Robert Lawrence Electronics Corporation*, 84 N.Y.S.2d 99 (1948) (summons requiring out-of-state defendant to appear in 6 days denied defendant due process of law as it did not have adequate notice of proceeding and did not have adequate opportunity to present defense). In fact, D.R.'s counsel indicated that under the circumstances, he could not provide an adequate defense of D.R.'s interests. Here, in order to allow D.R. sufficient time to prepare his defense and present his objections, the trial court should have granted the continuance.

The trial court's denial of the motion for continuance effectively terminated D.R.'s parental rights without giving him a sufficient opportunity to present a defense. "A parent's right in and to his or her children is of paramount importance and is entitled to due process protection under the Fourteenth Amendment." *In re M.L.K.*, 13 Kan. App. 2d 251, Syl. ¶ 1, 768 P.2d 316 (1989). Under the facts of this case, we find that the trial court abused its discretion in failing to grant the request for a continuance.

As previously stated, we have determined that the State failed to satisfy the due diligence requirement of K.S.A. 38-1582(c) to obtain jurisdiction over D.R. by publication. Even if the State had satisfied the due diligence requirement of K.S.A. 38-1582(c), we determine that the trial court erred when it failed to grant D.R. a reasonable continuance. As a result, we reverse and remand. If termination of parental rights proceedings are resumed, compliance with K.S.A. 38-1582 will be required.

In light of the above determination, it is unnecessary to address D.R.'s remaining argument that the trial court erroneously found clear and convincing evidence that D.R. was unfit and that D.R.'s condition was unlikely to change in the foreseeable future.

Reversed and remanded.