169 P.3d 240 (2007)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of J.C.S., a Child, and Concerning C.C., Respondent-Appellant.
No. 06CA1868.
Colorado Court of Appeals, Div. III.
July 12, 2007.
Rehearing Denied August 16, 2007.[*]
Certiorari Granted October 15, 2007.
*241 James Ripperger, County Attorney, Pueblo, Colorado, for Petitioner-Appellee.
Devon A. McFarland, Guardian Ad Litem.
Janet T. Kinniry, Gardner, Colorado, for Respondent-Appellant.
Opinion by Judge WEBB.
In this dependency and neglect proceeding, C.C. (mother) appeals from the denial of her motion to set aside the adjudicatory order and the subsequent judgment terminating the parent-child legal relationship with her child, J.C.S. She contends only that the statute authorizing service by a single publication  § 19-3-503(8)(b), C.R.S.2006  is unconstitutional on its face and as applied, because it did not provide her with actual notice of her legal rights before the child was adjudicated.
The trial court rejected these contentions, finding that mother "deliberately concealed herself" from law enforcement and the court. Based on this finding, which encompasses the four months between service by publication and the adjudication that she asks us to consider in assessing lack of actual notice, we conclude that she lacks standing to challenge the statute's constitutionality because her claimed injury was self-inflicted. Therefore, we dismiss the appeal.

I. Facts
On March 29, 2004, the Huerfano County Department of Social Services (department) received a referral indicating mother was using drugs and alcohol, leaving J.C.S. with various people, and failing to take him to speech therapy. Two days later, mother was arrested for auto theft and was taken to the Las Animas County Jail in Trinidad. After *242 several weeks there, she was transferred to the Pueblo County Jail, where she remained until she was released on June 10, 2004.
A caseworker in the department located mother in the Trinidad jail and together they developed a safety plan, which provided that (1) J.C.S. would be placed in foster care if an appropriate kinship home could not be found; (2) upon release from incarceration, mother would obtain stable housing and income and participate in a substance abuse evaluation, follow its recommendations, and remain substance free; and (3) a dependency and neglect proceeding would be filed if mother failed to establish a safe and stable home within ninety days.
Four days after mother was released from jail on June 10, she telephoned the caseworker, indicated her interest in starting drug and alcohol treatment, and asked to see her son. The caseworker advised mother that her signature was needed to authorize medical evaluations of J.C.S. Mother gave the caseworker a temporary phone number, explained that she did not have a place to live, and said that she would contact the caseworker as soon as her situation became more stable.
Because the caseworker was unable to contact mother at the temporary number, the department scheduled a shelter hearing for June 30, 2004. On June 28, 2004, mother called the caseworker and left a message. On the day of the shelter hearing, mother again called the caseworker, who advised her that the department was seeking temporary legal custody at a shelter hearing to take place that day. When mother replied that she could not find transportation to the hearing, the caseworker encouraged her to attend by telephone. The caseworker also set up an appointment with mother for July 7 to sign papers authorizing medical evaluations.
Mother failed to appear at or call in to the hearing. She did not meet the caseworker on July 7.
A petition in dependency and neglect was filed on July 8, 2004. The court authorized serving mother by publication, finding that her "whereabouts are currently unknown." On August 5, a summons was published in a Huerfano County newspaper with a return of service of August 25.
When mother did not appear in court on the return date, the court found her in default. She later testified at the termination hearing that after her release from the Pueblo County Jail, she had secreted herself from authorities for fear of further incarceration on an outstanding probation violation. On November 2, 2004, the court adjudicated J.C.S. dependent or neglected based on mother's default.
During 2005, mother was in and out of the Pueblo County Jail. In April 2005, mother wrote to the caseworker stating that she was in jail but would be released soon and expressing an interest in regaining custody of J.C.S. In response, the department sent her a letter notifying her of an upcoming review of J.C.S.'s foster placement and asking that she complete a questionnaire. Mother did not appear in person or by telephone at that review, but she did return the questionnaire.
On January 10, 2006, the department filed a motion for termination of the parent-child legal relationship, and, on February 27, 2006, the court authorized notice by publication of the termination hearing pursuant to § 19-3-602(2), C.R.S.2006.
Mother was again arrested on March 10, 2006, and remained in the Pueblo County Jail until July 25, 2006. However, on April 20, 2006, the county attorney filed a motion to transport mother from the jail to the May 3 termination hearing, which was her first appearance in these proceedings. Mother was then advised of her legal rights, she requested an attorney, and one was appointed for her. The court rescheduled the hearing for August 1, to allow mother to confer with her counsel.
Her attorney filed a motion to set aside the order of adjudication and dismiss the petition for termination of parental rights on the basis that § 19-3-503(8)(b) was unconstitutional, on its face and as applied. The as applied argument asserted that "the department knew that mother was in the Pueblo area [because] she had been incarcerated in Pueblo, [and] she told the department that she sought shelter upon release." The court *243 deferred ruling on mother's constitutional challenge and combined a hearing on the motion with the termination hearing.
Mother failed to appear on August 1, and the court continued the hearing to August 23. At that time, the court heard testimony from mother and the caseworker, as well as argument from counsel on mother's due process claim. Mother described the adjudicatory hearing as "the watershed in parents, child and family rights," and presented a chronology of events during 2004 in her written motion. However, the chronology does not identify any location where she could have been found and served between her release from Pueblo County Jail in June and the adjudication in November. She did not assert in the motion or at the hearing that the department should have provided her notice after the adjudication, although it knew of her reincarceration in the Pueblo County Jail during 2005.
The court held the statute constitutional on its face and as applied, and made findings from the bench, including:
I find the department exercised due diligence trying to locate her whereabouts by contacting last known address, family members, even going so far as to contact the jail, trying to arrange for calls, asking for follow ups, and her failure to appear for those. [sic]
In a later written order, the court found that after mother's release from incarceration on June 10, 2004, she "deliberately hid from law enforcement and made no contact with the Department of Social Services or with this Court for the next several months due to her fear that she would be rearrested," and that she "deliberately concealed herself from law enforcement, this Court and the Department of Social Services for several months following the filing of this action." The court noted that it had "specifically found and hereby finds that the Department of Social Services exercised due diligence in attempting to locate [mother] prior to the Court's authorization of publication." The court also found that mother had received adequate and appropriate notice of these proceedings through communications with the caseworker.
The department did not raise mother's standing to challenge the single publication statute either below or on appeal, but we requested supplemental briefs on this issue. In her supplemental brief, mother asserted:
Regarding this inquiry, the only relevant time period is between the time the People filed the Petition in Dependency and Neglect [July 8, 2004] and the time the court adjudicated J.C.S. [November 2, 2004]. The adjudication of the child as dependent and neglected is the watershed.
(Emphasis added.) She did not challenge the trial court's finding that she was in hiding during the only time which she asserts is relevant to our standing inquiry.
Neither the department's motion for service by publication nor a transcript of the hearing at which the court authorized such service is part of the record. Mother's supplemental brief states, "In all court documents and reports during the relevant period between June 28, 2004 and the final adjudication on October 26, 2004[sic], the People assert that the whereabouts of C.C. are unknown." On appeal, mother does not raise the absence of a written motion for service by publication from the record. See C.R.C.P. 4(g) (requiring verified motion for service by publication).

II. Law

A. Scope of Review
Standing is a question of law that we review de novo. See, e.g., Deutsch v. Kalcevic, 140 P.3d 340, 341 (Colo.App.2006).
Even where constitutional issues are treated as mixed questions of law and fact, we defer to a trial court's factual findings. Sanger v. Dennis, 148 P.3d 404, 410 (Colo.App.2006). If the record supports a factual finding, we are bound by it under the clear error test. Citizens Progressive Alliance v. Sw. Water Conservation Dist., 97 P.3d 308, 314 (Colo.App.2004). A trial court's findings concerning due diligence before service by publication in a parental rights proceeding are reviewed for abuse of discretion. C.M. v. R.D.H., 947 So.2d 1023, 1029 (Miss.Ct.App.2007).
*244 Therefore, the trial court's findings on mother's concealment and the department's due diligence are binding unless they are not supported by the record.

B. Threshold Standing Inquiry
Standing is an exception to the rule that we do not entertain arguments for the first time on appeal. HealthONE v. Rodriguez, 50 P.3d 879, 891 n. 5 (Colo.2002)("Although this issue was not presented to the court of appeals, standing is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings, including on appeal."). The overwhelming weight of authority supports this principle. See, e.g., Director v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 125, 115 S.Ct. 1278, 1282, 131 L.Ed.2d 160 (1995).
When the appellant lacks standing, the appeal should be dismissed for lack of jurisdiction. See, e.g., People in Interest of J.W.W., 936 P.2d 599, 600 (Colo.App.1997); City of Aspen v. Artes-Roy, 855 P.2d 22, 23 (Colo.App.1993). Where a constitutional claim has been asserted, the inability to show the element of resulting prejudice usually means "there is no `clear and inescapable necessity' to decide whether the challenged process" passes constitutional muster. People in Interest of N.A.T., 134 P.3d 535, 539 (Colo.App.2006); see also Flakes v. People, 153 P.3d 427, 437 (Colo.2007); People v. Kibel, 701 P.2d 37, 44 (Colo.1985).
The jurisdictional nature of standing requires a sua sponte inquiry where standing was not raised by the parties. Romer v. Bd. of County Comm'rs, 956 P.2d 566, 586 (Colo. 1998) ("Because standing is a jurisdictional prerequisite, a court may raise the issue sua sponte at any stage of the proceedings.").
A sua sponte inquiry is no less appropriate when parental rights are at issue, because of the state's "significant interest" in finalizing a dependency and neglect proceeding "in an expeditious manner." People in Interest of A.J., 143 P.3d 1143, 1146 (Colo. App.2006) (quoting People in Interest of T.D., 140 P.3d 205, 213 (Colo.App.2006)); see also People in Interest of N.A.T., supra, 134 P.3d at 539; People in Interest of R.J.A., 994 P.2d 470, 473 (Colo.App.1999).
Moody v. People, 159 P.3d 611 (Colo.2007), was decided after the parties had submitted their supplemental briefs on standing. We do not read Moody as restricting our standing inquiry in expedited civil appeals such as that before us, where lack of standing defeats jurisdiction and leads to resolution "on grounds other than those relied upon by the trial court." Moody v. People, supra, 159 P.3d at 615.
Moody dealt with a narrow question: sua sponte appellate inquiry into a criminal defendant's standing to seek suppression in a case over which the court otherwise had jurisdiction, and where an appellate court's use of the defendant's trial testimony to reverse a favorable suppression ruling could chill the defendant's right to testify in a criminal case. In resolving this question, the Moody court cited only criminal cases, most of which address suppression issues. The chilling effect concern does not apply in civil cases.
Unlike the dissent, we also do not read Mortgage Investments Corp. v. Battle Mountain Corp., 70 P.3d 1176, 1182 (Colo.2003) ("[w]e have held that traditional standing principles do not apply to defendants," who may "assert an affirmative defense in response to a complaint"), as eliminating the requirement that a defendant challenging a statute on constitutional grounds must show prejudice to establish standing. This interpretation would mean that a constitutional statutory challenge by a plaintiff could be rejected for lack of standing, but the identical challenge by a defendant could not. Cf. FSDW, LLC v. First Nat'l Bank, 94 P.3d 1260, 1264 (Colo.App.2004)(noting anomaly of result that would permit a plaintiff, but not a defendant, to challenge a ruling).
Such an interpretation would also undercut the principle that a constitutional issue should be decided only if "the necessity for such decision is clear and inescapable." People v. Lybarger, 700 P.2d 910, 915 (Colo. 1985). As a corollary of this principle, "prudential" standing concerns "recognize that unnecessary or premature decisions of constitutional questions should be avoided." City of Greenwood Village v. Petitioners for *245 Proposed City of Centennial, 3 P.3d 427, 437 (Colo.2000).
We doubt that the Battle Mountain court intended such a sea change without mentioning any of its prior cases that preclude defendants who can not show injury from challenging a statute on constitutional grounds. See, e.g., Butler v. Farner, 704 P.2d 853, 857 n. 8 (Colo.1985) ("We do not address their argument because there is no evidence in the record showing that the defendants were required to post any appeal bond or undertaking under the F.E.D. statute. The defendants therefore lack standing to challenge the constitutionality of the provisions in the F.E.D. statute requiring litigants to post a bond or undertaking on appeal."); Williams v. City & County of Denver, 622 P.2d 542, 545 (Colo.1981)("[W]e conclude that Williams cannot attack the constitutionality of those provisions of the Code which do not apply to the acts or omissions which were the basis for the charges in this case."); cf. Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1, 188 Colo. 310, 315, 535 P.2d 200, 204 (1975) (defendant political subdivision of the state lacked standing to challenge constitutionality of state statute).
Nor did the court in Battle Mountain address or disapprove of cases from this court applying traditional standing analysis to preclude defendants from raising constitutional statutory challenges. See, e.g., People in Interest of R.J.A., supra; People in Interest of E.I.C., 958 P.2d 511 (Colo.App.1998).
The affirmative defense at issue in Battle Mountain also did not raise the constitutionality of a statute. The same is true of the defense in People ex rel. Simpson v. Highland Irrigation Co., 893 P.2d 122, 127 (Colo.1995)(cited with approval in Battle Mountain).
In contrast, mother's constitutional challenge raised more than an affirmative defense, as was raised in Battle Mountain, supra (statute of limitations), and was not a "defensive claim only," as was the claim in Highland Irrigation Co., supra, 893 P.2d at 127. Her motion was not limited to resolution of the department's petition in this action, but if successful would have voided § 19-3-508(8)(b) and precluded proceedings on the basis of service by publication in all future dependency and neglect proceedings. Hence, we treat it more like "an independent cause of action." Highland Irrigation Co., supra, 893 P.2d at 127, than a purely defensive assertion.
Accordingly, we are guided by traditional standing principles that require us to consider whether mother has standing to challenge the constitutionality of § 19-3-503(8)(b).

C. Elements of Standing
A claimant has standing to challenge the constitutionality of a statute if (1) the claimant suffered an actual injury (2) to a legally protected interest. Ainscough v. Owens, 90 P.3d 851, 855 (Colo.2004). Parental rights constitute a legally protected interest. L.L. v. People, 10 P.3d 1271, 1275-76 (Colo. 2000)("the interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized by this Court" (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000))).
"A plaintiff satisfies the injury in fact requirement by demonstrating that the activity complained of has caused or has threatened to cause injury to the plaintiff. . . ." Dunlap v. Colo. Springs Cablevision, Inc., 829 P.2d 1286, 1289 (Colo.1992). We consider whether the claimant is "personally adversely affected by the particular constitutional defect asserted." People v. Lee, 717 P.2d 493, 495 (Colo.1986); accord DiLeo v. Bd. of Regents, 196 Colo. 216, 221, 590 P.2d 486, 489 (1978); People v. Stage, 195 Colo. 110, 113, 575 P.2d 423, 425 (1978).
But the injury in fact requirement cannot be satisfied by self-inflicted harm. Nova Health Sys. v. Gandy, 416 F.3d 1149, 1157 n. 8 (10th Cir.2005) (collecting cases); see also Petro-Chem Processing, Inc. v. Envtl. Prot. Agency, 866 F.2d 433, 438 (D.C.Cir.1989) ("to the extent that this injury is self-inflicted, it is `so completely due to the [complainant's] own fault as to break the causal chain'" (quoting 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3531.5, at 458 (2d ed.1984))); cf. Koolvent Metal Awning Corp. *246 v. Bottom, 205 F.2d 209, 215 (8th Cir.1953) (standing found lacking based on unclean hands).
The self-inflicted injury limitation on standing has not been addressed in Colorado. In Wimberly v. Ettenberg, 194 Colo. 163, 169, 570 P.2d 535, 539 (1977), the court distinguished the plaintiff's alleged injury in fact to a protected legal right, which "can be decided by the court as a matter of law in the preliminary inquiry on standing," from action of the defendant that caused the alleged injury, which is "properly reserved for the trier of fact and is the primary question to be resolved on the merits." The court emphasized the importance of a merits determination by the fact finder "pursuant to due process that the injury in fact to plaintiff's legally protected right resulted from the alleged action of the defendant." Wimberly v. Ettenberg, supra, 194 Colo. at 169, 570 P.2d at 539.
The dissent correctly points out that the federal self-inflicted injury cases intertwine standing and causation. Nevertheless, we do not perceive Wimberly as foreclosing this limitation on standing, particularly on the record before us.
Standing cases since Wimberly have cast the injury in fact requirement in terms of causation. See Romer v. Colo. Gen. Assembly, 810 P.2d 215, 218 (Colo.1991)(injury in fact can be proved by showing that "the action complained of has caused or has threatened to cause injury" (quoting Wimberly, supra, 194 Colo. at 168, 570 P.2d at 539)); accord Dunlap v. Colo. Springs Cablevision, Inc., supra, 829 P.2d at 1289.
Further, even if Wimberly requires causation to be determined on the merits, here the findings that establish mother's self-inflicted injury  she "hid" and "concealed herself"  were made by the court on the merits after a hearing at which mother was represented by counsel. Hence, our reliance on the trial court's findings to resolve standing does not deprive mother of "a judgment on the merits . . . pursuant to due process." Wimberly v. Ettenberg, supra, 194 Colo. at 168, 570 P.2d at 539.
And for the latter reason, the department's failure to raise standing below does not diminish the significance of these findings. See Dunlap v. Colo. Springs Cablevision, Inc., supra, 829 P.2d at 1289 (the standing inquiry is "inextricably tied to the merits of the case").
Finally, service by publication has been held constitutional under appropriate circumstances, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), and cannot be presumed to be prejudicial. Thus, a party subject to a court's jurisdiction based on service by publication must show prejudice to establish standing for a due process claim. Cf. Deck v. Missouri, 544 U.S. 622, 635, 125 S.Ct. 2007, 2016, 161 L.Ed.2d 953 (2005) (due process violation found because defendant's appearance before jury in shackles inherently prejudicial).
Therefore, we turn to applying these elements, and conclude that mother lacks standing.

III. Application
Initially, we must distinguish between two injuries. First, the court proceeded on the basis of service by publication, which mother testified that she never saw, and therefore, she did not know of her legal rights before the child was adjudicated. Second, mother lost custody of her child through the adjudication before she appeared, and eventually lost her parental rights. Both of these injuries involve legally protected interests. See Ainscough v. Owens, supra.
The trial court's proceeding on the basis of service by publication is "the particular constitutional defect asserted." People v. Lee, supra, 717 P.2d at 495; see People in Interest of R.J.A., supra, 994 P.2d at 473 (where mother brought an equal protection challenge to a statute providing a limited time to comply with a treatment plan, legal interest was in the amount of time to determine compliance and not mother's ultimate loss of parental rights). Its direct result is lack of notice to mother of her legal rights. Cf. Walker v. City of Hutchinson, Kan., 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 *247 (1956) ("It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property.")
In contrast, lack of actual notice to mother of her legal rights before the adjudication caused her to lose custody of the child only if she had a meritorious defense to the adjudication, which she would have asserted. However, mother did not testify to any such defenses or that if notified of her legal rights, she would have come out of hiding to appear in court and assert them.
Hence, in our view she must prove injury in terms of lack of actual notice of her legal rights, not on speculation as to the indirect consequences of lack of notice  loss of custody through the adjudication. We conclude that such lack of notice resulted from her actions in concealing herself from law enforcement, the court, and the department.
To prove that the statute was unconstitutional as applied, mother had to show that the department did not exercise due diligence in trying to find her, at least before the trial court adjudicated the child, if not earlier before it defaulted her based on service by publication. In attempting to make this showing at the hearing, she testified at length about her periods of incarceration, her limited communications with the department, her understanding of court proceedings involving the child, and her ongoing efforts to avoid the authorities following her release from the Pueblo County Jail in 2004.
Mother's motion to set aside the adjudication argued that the department did not exercise due diligence because it allegedly knew "that mother was in the Pueblo area," yet it published the notice in Huerfano County. At the conclusion of the hearing, mother made a lengthy oral argument concerning events before the adjudication, focusing on the department's failure to give her notice at least by "publication for four weeks."
Thus, in litigating the alleged due process violation, mother had ample opportunity to show what additional efforts the department could have made to contact her, despite her concealment; the department's knowledge of her whereabouts; and how she would have responded, such as by participating in the treatment plan, had she received actual notice. Because mother had a hearing on the merits of her due process claim, the procedural defect at issue  proceeding on the basis of service by publication  does not itself deprive her of the opportunity to show prejudice  lack of actual notice of her legal rights. See Town of Somerset v. Montgomery County Bd. of Appeals, 245 Md. 52, 66, 225 A.2d 294, 302 (1966) (denial of cross-examination prevents showing of prejudice based on what cross-examination could have established).
The department filed the petition on July 8, 2004, and the trial court entered default against mother based on the August 25 return date. The trial court found that during this seven-week period mother was in hiding.
Mother's own testimony supports the court's findings. She admitted she knew "that there was going to be court involvement" with the child on June 30, 2004, but did not attend that proceeding in person or even by telephone, as the caseworker had suggested. And although she had promised to meet the caseworker on July 7, 2004, and sign documents authorizing medical procedures for the child, she did not do so.
She explained that because of an outstanding probation violation, she had been "pretty much on the run from the law for 4[sic] years," which ended with her 2003 incarceration in Huerfano County. After her release from the Pueblo County Jail in June 2004, she was "on the run . . . because [of] the probation again." She never contacted the court.
In her supplemental brief on standing, mother urges us to focus on the time between July 8, 2004, when the petition was filed, and November 2, 2004, when the child was adjudicated, as "the only relevant period." But mother initiated no contact with the department or the court during this time, and according to the trial court's findings she remained in hiding.
Due diligence to ascertain the identity of interested parties before service by publication satisfies due process. Lobato v. Taylor, 70 P.3d 1152, 1161 (Colo.2003)(property ownership case). The same standard applies to termination of parental rights. *248 See, e.g., In re Claudia S., 131 Cal.App.4th 236, 247, 31 Cal.Rptr.3d 697, 703 (2005). Section 193502(8)(b) permits service by publication where the person to be served "cannot be found within the state after due diligence."
Based on the testimony of mother and the caseworker at the termination hearing, the trial court reaffirmed its finding that the department had acted with due diligence in attempting to locate her. However, even assuming the department could have made greater efforts to locate mother before the adjudication, we would still conclude that her lack of actual notice would be self-inflicted because of her willful concealment from the court.
Her avowed intent to avoid the authorities strongly indicates that even if found and personally served, she would not have appeared in court to assert her rights. Indeed, mother's first contact with the court was on the county attorney's motion to have her transported from jail, some eighteen months after the child had been adjudicated. Cf. People in Interest of R.J.A., supra, 994 P.2d at 473 ("the record fails to establish that, even if mother had been given 18 months to comply, there is any reasonable possibility that she would have complied with the treatment plan"). Thus, the trial court's findings that mother concealed herself during the adjudicatory phase and that the department sought her with due diligence remove any question of comparative fault in applying the self-inflicted injury rule. See St. Pierre v. Dyer, 208 F.3d 394, 402 (2d Cir.2000) (the injury "is so completely due to the plaintiff's own fault as to break the causal chain.").
Because mother does not ask us to consider what notice the department might have provided her in 2005, we decline to address comparative fault in the context of that year, when the department knew of her reincarceration. Such a broader inquiry is irreconcilable with the "self-restraint" that the Moody court "derived from the contours of our adversarial system, in which `appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" Moody, supra, 159 P.3d at 614 (quoting Rose v. United States, 629 A.2d 526, 536-37 (D.C.1993)).
Applying the self-inflicted injury limitation is particularly appropriate here because concealment would be improperly rewarded if a person who hides from the authorities to avoid an outstanding probation violation nevertheless would have standing to raise lack of actual notice. See Marks v. Comm'r, 947 F.2d 983, 986 (D.C.Cir.1991) ("It is quite apparent that the reasons the [taxpayers] kept the Commissioner  and the government  unapprised of their whereabouts was because they were fugitives from criminal prosecution. [They cannot] turn around and blame the Commissioner for not finding them. . . ."); see also In re Smith, 989 P.2d 165, 173 (Colo.1999) (procedural due process claim rejected because delay in disciplinary proceedings primarily fault of party being disciplined); Donahue v. Pub. Utils. Comm'n, 145 Colo. 499, 507, 359 P.2d 1024, 1028 (1961)(a person may not profit from his own wrong); cf. McGee v. Hardina, 140 P.3d 165, 168 (Colo.App.2005)(statute of limitations tolled by defendant's concealment).
Accordingly, we conclude that mother lacks standing to raise a due process challenge to the statute allowing service by publication. Because standing is jurisdictional, our conclusion forecloses inquiry into the merits of her due process arguments.
Having so concluded, we need not address the trial court's alternative determination that mother had actual notice of the proceedings from her communications with the caseworker before the shelter hearing or the significance of lack of a formal advisement of her legal rights under § 19-3-503.
The appeal is dismissed.
Judge ROMÁN concurs.
Judge TAUBMAN dissents.
Judge TAUBMAN dissenting.
In this dependency and neglect proceeding, I believe that it is not proper to dismiss the appeal of C.C. (mother) for lack of standing. Further, I would address the merits of mother's constitutional challenge to the statute authorizing service by a single publication *249 and conclude that it is unconstitutional as applied because it did not provide her with adequate notice.
More specifically, with respect to standing, I conclude that dismissing this appeal because of mother's lack of standing is contrary to Colorado Supreme Court case law holding that traditional standing principles do not apply to defendants in civil cases. Further, the supreme court's recent opinion in Moody v. People, 159 P.3d 611 (Colo.2007), counsels against the court of appeals' addressing the issue of standing sua sponte and either dismissing a case based on lack of standing or remanding to the trial court for further factual determination on that issue. Even if I am mistaken in my assessment that Moody applies to civil cases as well as criminal cases, I conclude, based on the limited record, that mother has demonstrated standing under Colorado's liberal approach to standing.
Further, I conclude that the federal cases denying standing based upon the theory of "self-inflicted injury" have no application under Colorado's standing jurisprudence and, in any event, that rule would not preclude standing under the circumstances presented here.
On the merits, I would conclude that mother's constitutional right to reasonable notice was denied because the Huerfano County Department of Social Services (department) concedes that the single published notice in this case was not reasonably calculated to provide mother with actual notice of the dependency and neglect proceedings and because the trial court's finding that the department exercised "due diligence" in attempting to serve mother personally is not the standard by which to judge whether the department violated mother's constitutional right to adequate notice of these proceedings.

I. Background
The following facts supplement those contained in the majority's opinion and help place the issues here in proper perspective.
A petition in dependency and neglect was filed on July 8, 2004. Four days later, the court granted the department's motion to serve mother by publication because her whereabouts were unknown. On August 5, a summons was published in small type in a Huerfano County newspaper with a return of service of August 25. That court-approved summons included a nine-point statement of a parent's legal rights and privileges in a dependency and neglect proceeding, including (1) the right to an attorney and to have an attorney appointed at state expense if the parent is indigent; (2) the right to have an appointed expert witness at state expense; (3) the right to a jury trial; (4) upon the filing of a petition, the right to receive a summons; (5) the right to cross-examine witnesses; and (6) the right to request a rehearing or a new trial. Mother never learned of this published summons.
Mother failed to appear in court on the return date stated in the summons, and the court found her in default. She later testified at the termination of parental rights hearing that she had secreted herself from the law for fear of further incarceration because of pending criminal charges. On November 2, 2004, the court adjudicated J.C.S. dependent or neglected based upon mother's default.
In April 2005, mother wrote a letter to the caseworker, stating that she was in jail but would be released soon and expressing an interest in regaining custody of J.C.S. Although the department sent her a letter notifying her of an upcoming review of J.C.S.'s foster placement and asking that she complete a questionnaire, it did not serve her personally.
On January 10, 2006, the department filed a motion for termination of the parent-child legal relationship, and, on February 27, 2006, the court authorized notice by publication of the termination hearing pursuant to § 19-3-602(2), C.R.S.2006.
Mother was advised for the first time of her legal rights in the dependency and neglect proceeding on May 3, 2006, when she was transported to court from the Pueblo County Jail. She requested an attorney, and one was appointed for her at that time.
*250 Subsequently, her attorney filed a motion challenging the constitutionality of § 19-3-503(8)(b), C.R.S.2006, on its face and as applied. That statute authorizes service by a single newspaper publication in specified circumstances in a dependency and neglect proceeding. In contrast, service by publication once each week for five successive weeks is authorized under C.R.C.P. 4(g) "only in actions affecting specific property or status or other proceedings in rem." The court deferred ruling on mother's constitutional challenge and combined a hearing on the motion with the termination hearing.
Holding the statute to be constitutional, the court made extensive findings, including that the department had exercised due diligence under § 19-3-503(8)(b) in attempting to serve mother.
Furthermore, the court found that mother had been sufficiently advised of her rights in the dependency and neglect proceeding:
[A]lthough it is not certainly a completely adequate substitute for court advisement . . . of her rights, the mother as early as April 13, 2004, signed a safety plan where she was in the custody of I believe at that time Las Animas County jail.
. . . .
The mother acknowledged in writing April 13, 2004, part of her safety plan in paragraph 5, that once Huerfano County department of social services believes [mother can] provide [a] safe and stable home for [the child], he will return to her home. If this does not happen within 90 days, the department will be filing a dependency and neglect petition with the Court.
The caseworker indicated she explained to [mother], in layman's terms what that involved. And certainly in terms of the as applied [constitutional] argument, mother's been aware of these court proceedings for the past 2 years, she's been aware the department has had custody of her child.
Although it acknowledged mother had not seen the published summons, the court found mother had been notified of the shelter hearing by the caseworker the same day it occurred and that mother was aware that the department had been involved in her child's welfare for quite some time. It also found that mother had been living in Pueblo a majority of the time, although she lived briefly in Huerfano and Las Animas Counties.
The court concluded that § 19-3-503(8)(b) was not unconstitutional on its face or as applied to mother. It also entered a judgment terminating mother's parental rights. Mother challenges these rulings on appeal.

II. Standing

A. Standing Principles Do Not Apply to Defendants
In my view, it is improper to dismiss mother's appeal for lack of standing because "traditional standing principles do not apply to defendants." Mortgage Invs. Corp. v. Battle Mountain Corp., 70 P.3d 1176, 1182 (Colo. 2003). As the Colorado Supreme Court has explained:
[O]nce the plaintiff has established standing and the defendants have been haled into court by the plaintiff, the only role for the defendants is to defend against the suit. The defendants' affirmative defense does not constitute an independent cause of action, but it is a defensive claim only. Therefore, the rules for determining whether a plaintiff has standing are simply inapplicable to the defendants in this case.
People ex rel. Simpson v. Highland Irrigation Co., 893 P.2d 122, 127 (Colo.1995). The supreme court's holding that traditional standing principles do not apply to defendants in civil cases does not turn on whether the defendant raises an affirmative defense. Neither an affirmative defense nor a motion to challenge service by publication constitutes an independent cause of action; both are defensive claims only. Moreover, nothing in Mortgage Investments Corp., supra, or People ex rel. Simpson v. Highland Irrigation, supra, excepts from their holdings challenges to the constitutionality of a statute.
This limitation makes sense because, once a lawsuit is filed against a defendant, the defendant should be free to challenge the proceedings against him or her on any appropriate grounds, and if those grounds are not meritorious, the plaintiff will ordinarily prevail.
*251 Neither Butler v. Farner, 704 P.2d 853 (Colo.1985), Williams v. City & County of Denver, 622 P.2d 542 (Colo.1981), nor any other published opinion in Colorado is to the contrary. For example, in Butler, 704 P.2d at 857 n. 8, the supreme court held that defendants in a forcible entry and detainer action did not have standing to challenge the constitutionality of provisions requiring litigants to post a bond or undertaking on appeal. That issue was not a claim against a plaintiff, but rather, a challenge to the procedures for filing an appeal in a forcible entry and detainer case.
Williams v. City & County of Denver, supra, is distinguishable because it involved a constitutional challenge to a defendant's conviction in a criminal case for violation of a Denver Municipal Code provision. In criminal cases, an extensive body of case law has upheld the right of the prosecution to challenge a defendant's standing to file a motion to suppress evidence or to contend a statute is unconstitutional on the basis of vagueness or overbreadth. See Moody v. People, supra; Wayne R. LaFave, 6 Search and Seizure: A Treatise on the Fourth Amendment § 11.3 (4th ed.2004). However, that line of cases has not been extended to permit standing challenges against defendants in civil cases. See Mortgage Invs. Corp. v. Battle Mountain Corp., supra.
Accordingly, because mother is a respondent in a civil case, her appeal should not be dismissed because of lack of standing.
I would conclude that under Moody, we should not address standing in this appeal, and that in any event, mother has standing to raise her constitutional arguments.

B. Application of Moody v. People

Standing is a threshold jurisdictional issue and, therefore, may be raised at any stage of the proceedings, including on appeal. HealthONE v. Rodriguez, 50 P.3d 879, 891 n. 5 (Colo.2002). However, there is no requirement that standing must be raised sua sponte on appeal in all circumstances.
Reversing the opinion of a division of the court of appeals on a suppression issue, the supreme court cautioned the court of appeals against addressing standing sua sponte without a fully developed factual record. Moody v. People, supra.
The Moody court acknowledged that the court of appeals may address standing sua sponte, but limited the circumstances in which such review is appropriate. The court also noted that in a limited number of cases, remand may be appropriate for the trial court to determine the facts necessary to rule on standing.
Although Moody was a criminal case, the language addressing standing was not so limited in scope, and I conclude it applies equally in the civil context.
Further, even if standing could be raised here, principles of judicial restraint suggest that standing should not be raised sua sponte by the court of appeals in these circumstances.
Here, the trial court held that in light of the fact that mother secreted herself from the court between July and November 2004, the department's diligent efforts to locate her, and mother's actual knowledge of the proceedings, service of process by publication was warranted. I would not determine whether these findings were clearly erroneous because (1) they addressed the statutory requirement of due diligence for service by publication and not mother's standing to challenge the service by publication statute; (2) mother's actual knowledge of the proceedings does not substitute for service of process; and (3) even though mother was aware of the proceedings, she was not advised of her legal rights, including her legal right to counsel.
First, the trial court made the above findings in examining whether the department was authorized to serve mother by publication. The court did not address the question of standing because the department did not raise it. Thus, it would be unfair to conclude sua sponte that mother lacks standing to challenge the constitutionality of the service by publication statute when she did not have the opportunity to demonstrate to the trial court that she satisfied the requisites for standing  injury in fact to a legally protected *252 interest. See Ainscough v. Owens, 90 P.3d 851, 855 (Colo.2004).
Because the department did not raise standing in the trial court, mother's attorney also did not have an opportunity to develop the record in regard to that issue. See Moody v. People, supra, 159 P.3d at 616 (noting Combs v. United States, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972), where the defendant was lulled into position of not developing facts necessary to establish standing because the state failed to raise issue of standing in the trial court); cf. HealthONE v. Rodriguez, supra (addressing standing for the first time, supreme court held plaintiff had standing to challenge statute based on undisputed fact that he would receive his judgment in periodic payments, rather than as lump sum).
Specifically, had standing been raised in the trial court, mother could have conducted discovery and presented testimony as to (1) when she first received notice of her legal rights; (2) whether she would have exercised her right to counsel immediately if she had been personally served earlier in the proceedings; (3) what additional efforts, if any, the department could have made to contact her, both at the outset of the proceeding and later, when the department learned where she was incarcerated; (4) when the department knew or should have known she was incarcerated; and (5) what other steps, such as participation in the treatment plan, she would have taken had she been personally served earlier in the proceedings.
Although there was a hearing on July 12, 2004 to determine whether the department had exercised due diligence in attempting to contact mother, the record on appeal does not include (1) the department's oral or written motion for service by publication and the basis for the trial court's order granting that motion; or (2) the transcript of the July 12 hearing in which the court apparently made oral findings supporting service by publication. Any fault for failing to designate the July 12 hearing transcript record on appeal should not be attributed to mother, because she could not have known that standing would be raised on appeal sua sponte. In any event, although the designation of record encompassed all motions, the record does not contain any written motion for service by publication, in apparent violation of § 19-3-503(8)(b) and C.R.C.P. 4(g). See C.R.C.P. 4(g) (requiring filing of verified motion for an order requesting service by publication; motion must describe efforts to obtain personal service and must provide last known address of person to be served).
Second, the department argues mother did not suffer any prejudice because she had actual notice of the proceeding due to her telephone conversation with the caseworker on the day of the shelter hearing. However, even if the caseworker had apprised mother of the shelter hearing and her rights in the later filed dependency and neglect proceeding, which the caseworker conceded she did not, actual notice is not a substitute for the formal requirements of service of process. See In Interest of S.R., 34 Kan.App.2d 202, 116 P.3d 43, 46 (2005)(noting, in a proceeding for termination of parental rights, "actual notice does not cure jurisdictional defects in the issuance and service of process"); see also In re Marriage of McDaniel, 54 Or.App. 288, 634 P.2d 822, 823 (1981) (holding fact that father may have had actual knowledge of custody proceedings and was able to appear was insufficient to confer personal jurisdiction without service of process).
In any event, the shelter hearing, authorized by § 19-3-401, et seq., C.R.S.2006, is separate from a dependency and neglect petition, see § 19-3-501, et seq., C.R.S.2006, which may lead to a termination of parental rights. Thus, notice of a shelter hearing is not the equivalent of notice of the filing of a dependency and neglect petition.
Third, mother was not formally advised of her legal rights in the dependency and neglect proceeding, as is required by § 19-3-503(1), C.R.S.2006. Unlike in other civil cases governed by C.R.C.P. 4(g), respondent parents in dependency and neglect proceedings must be advised, "when appropriate," of their constitutional and legal rights, including the right to have an attorney present at the hearing on the petition. Section 19-3-503(1).
Because the trial court's findings did not address these three factors, its findings that *253 mother had secreted herself and that the department had exercised due diligence are not determinative of whether she suffered injury in fact to a legally protected interest.
I acknowledge the imperative to resolve this case expeditiously. People in Interest of A.J., 143 P.3d 1143, 1146 (Colo.App.2006). It would further delay this already prolonged litigation if we were to remand this case to develop a factual record with respect to standing, as Moody indicated is appropriate in limited circumstances. However, here, as in Moody, the significant period (three years) since the events on which a determination of standing must be based, indicates that remand would be inappropriate. Accordingly, based on Moody, the undeveloped factual record and the need to determine expeditiously the issue of termination of J.C.S.'s parental rights militate against a sua sponte inquiry into standing.
Nevertheless, in the event that I am mistaken about the application of Moody to civil cases, I would consider whether mother has standing to bring this challenge based on the supplemental briefs and the limited record and would conclude she has standing.

C. Elements of Standing
A claimant has standing to challenge the constitutionality of a statute if he or she suffered (1) an actual injury (2) to a legally protected interest. Although much of the standard is a prudential exercise of judicial restraint, parties in Colorado benefit from a relatively broad definition of standing. Ainscough v. Owens, supra, 90 P.3d at 855. Deprivations of many legally created rights, such as the deprivation of civil liberties, although intangible, are nevertheless injuries in fact. Ainscough v. Owens, supra, 90 P.3d at 856. Legally protected interests encompass all rights arising from constitutions, statutes, and case law. Ainscough v. Owens, supra, 90 P.3d at 856.
Here, mother argues she lost legal custody of her child, and eventually her parental rights, as a result of not being personally served or having actual notice of the published summons in the dependency and neglect proceeding. I agree that mother's lack of notice constituted injury in fact, because the failure to provide adequate notice meant that she was unaware of her legal rights, including her right to counsel, and the termination of parental rights is a real and tangible injury. L.L. v. People, 10 P.3d 1271, 1275-76 (Colo.2000)(quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000), which recognized "the interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized by this Court").
Further, the right to procedural due process is a legally protected interest. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Thus, I conclude mother had a legally protected interest in receiving adequate notice of the dependency and neglect proceeding as required by statute and procedural due process.
Because the trial court adjudicated J.C.S. dependent and neglected even though mother was not present at the adjudicatory hearing in October 2004, mother has asserted an actual injury to a legally protected interest and I conclude that she has standing to bring this appeal.
People in Interest of R.J.A., 994 P.2d 470, 473 (Colo.App.1999), relied on by the department, is inapposite. In that case, a divided division of this court determined that the mother lacked standing to make an equal protection challenge to a statute which permitted counties to impose different amounts of time to comply with a treatment plan. There, the mother did not establish that she would have been able to comply with the treatment plan even if she had been accorded a longer period to comply. See People in Interest of R.J.A., supra, 994 P.2d at 473. In contrast, here, mother alleges she was not notified of her rights until shortly before the termination hearing and that such late notice prevented her from adequately protecting her interest in maintaining her parental rights.

D. "Self-Inflicted Injury"
In my view, applying the federal line of "self-inflicted injury" cases as a basis for *254 denying standing is inapposite under Colorado case law, and is inconsistent with Colorado's broad approach to the determination of standing. See Ainscough v. Owens, supra.
The "self-inflicted injury" line of cases stems from an interpretation of step two of a three-part federal standing test. That step requires a causal connection between the injury and the conduct complained of. See St. Pierre v. Dyer, 208 F.3d 394, 401-02 (2d Cir.2000). In contrast, in the seminal Colorado standing case, Wimberly v. Ettenberg, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977), the supreme court specifically rejected the three-pronged federal test and determined that, in Colorado, the standing inquiry is limited to whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. The supreme court held the federal standing requirement of causation "is properly reserved for the trier of fact and is the primary question to be resolved on the merits." Wimberly v. Ettenberg, supra, 194 Colo. at 168, 570 P.2d at 539.
Furthermore, in Colorado, parties to lawsuits continue to benefit from a relatively broad definition of standing based on the two-part test set forth in Wimberly v. Ettenberg, supra. See, e.g., Garhart v. Columbia/HealthONE, L.L.C., 95 P.3d 571, 579 (Colo.2004). Neither in Romer v. Colorado General Assembly, 810 P.2d 215, 218 (Colo. 1991), nor in any other case, has the supreme court retreated from its holding in Wimberly that the federal standing requirement of causation does not apply in Colorado. In Romer, the supreme court relied on Wimberly in stating that "[i]njury in fact may be proven by showing that `the action complained of has caused or has threatened to cause injury.'" Romer v. Colo. Gen. Assembly, supra, 810 P.2d at 218 (quoting Colo. Gen. Assembly v. Lamm, 700 P.2d 508, 516 (Colo.1985)). I perceive no basis for concluding that the Colorado Supreme Court has sub silentio reverted to the federal causation requirement of standing which it had specifically rejected in Wimberly.
Consequently, it is inconsistent with Colorado case law on standing to transmute federal case law interpreting the causation prong of standing and construe it as applicable to the injury in fact requirement under Colorado law. Accordingly, causation is properly determined by analyzing an argument's merits and not during the determination of standing.
In any event, as one federal court noted:
[S]tanding is not defeated merely because the plaintiff has in some sense contributed to his own injury. Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain. So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing.
St. Pierre v. Dyer, supra, 208 F.3d at 401 (citation omitted) (quoting 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.5, at 457 (2d ed.1984)).
Here, mother may be partly at fault for hiding from the authorities because of her fear of reincarceration. However, the failure of the department to provide her with actual notice is partly attributable to the department, which never advised mother of her legal rights and did not personally serve her at least by April 2005, when it knew that she was confined in the Pueblo County Jail.

E. Prejudice
The department, nonetheless, contends that People in Interest of N.A.T., 134 P.3d 535 (Colo.App.2006), requires that a claimant show harm or prejudice to obtain relief on an as applied due process challenge. I conclude that even if such a showing is required, see People in Interest of N.A.T., supra, 134 P.3d at 540 (Román, J., dissenting), that showing has been made here.
Mother contacted the caseworker on June 28 and 30, 2004, and the caseworker advised her of the shelter hearing that was to take place June 30 to determine temporary custody of J.C.S. See § 19-3-401, et seq., C.R.S. 2006 (setting forth shelter hearing procedures to determine temporary custody of children). Although the caseworker advised mother that the department was about to file *255 a dependency and neglect petition, it was uncontested that she did not advise mother of her legal rights, including the right to be represented by appointed counsel. See § 19-3-503; see also § 19-3-202, C.R.S.2006 (at first appearance, court must advise respondent parent of legal rights, including right to counsel). Mother testified at the termination hearing, "I didn't know I lost my [parental] rights. Or I was going to lose my [parental] rights." Therefore, mother did, in fact, suffer prejudice.

III. Constitutionality As Applied
I further agree with mother that the trial court erred in concluding § 19-3-503(8)(b) was constitutional as applied to her because she was provided with inadequate notice of the dependency and neglect proceeding, which led to the loss of her parental rights.
Review of the trial court's assessment of the constitutionality of a statute is de novo. E-470 Pub. Highway Auth. v. Revenig, 91 P.3d 1038, 1041 (Colo.2004).
A person challenging the constitutionality of a statute as applied must show that there is a reasonable probability that the statute is unconstitutional. See Sanger v. Dennis, 148 P.3d 404, 410-11 (Colo.App.2006) (contrasting burdens of proof in as applied challenge with burden of proof in facial challenge which requires proof beyond a reasonable doubt).
Procedural due process requires, among other things, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "[N]otice by publication is adequate only where `it is not reasonably possible or practicable to give more adequate warning.'" Jones v. Flowers, 547 U.S. 220, 236, 126 S.Ct. 1708, 1720, 164 L.Ed.2d 415 (2006)(quoting Mullane, supra, 339 U.S. at 317, 70 S.Ct. at 658). The Supreme Court also has recognized that "`[c]hance alone' brings a person's attention to `an advertisement in small type inserted in the back pages of a newspaper.'" Jones v. Flowers, supra, 547 U.S. at 236, 126 S.Ct. at 1720 (quoting Mullane, supra, 339 U.S. at 315, 70 S.Ct. at 658). Indeed, the department, in its response to the petition on appeal, acknowledged that even though service by publication has been judicially approved, "the Courts have recognized that service by publication is an indirect and probably a futile means of notification."
Section 19-3-503 provides for the content and service by publication of a summons in a termination proceeding:
(1) After a petition [in dependency and neglect] has been filed, the court shall promptly issue a summons reciting briefly the substance of the petition. The summons shall also contain a statement, when appropriate, that the termination of the parent-child legal relationship is a possible remedy under the proceedings and shall set forth the constitutional and legal rights of the child, his parents, guardian, or legal custodian, or any other respondent or special respondent, including the right to have an attorney present at the hearing on the petition.
. . . .
(3) The summons shall require the person or persons having the physical custody of the child to appear. . . .
. . . .
(8) If the respondent required to be summoned under subsection (3) of this section cannot be found within the state, the fact of the child's presence in the state shall confer jurisdiction on the court as to any absent respondent if due notice has been given in the following manner:
. . . .
(b) When the person to be served has no residence within Colorado and his place of residence is not known or when he cannot be found within the state after due diligence, service may be by publication pursuant to rule 4(h) [now 4(g)] of the Colorado rules of civil procedure; except that service may be by a single publication and must be completed not less than five days prior to the time set for a hearing concerning a dependent or neglected child.
Cf. C.R.C.P. 4(g) (allowing publication notice in limited circumstances and requiring publication five times).
*256 Compliance with the statute may not satisfy due process concerns, and additional steps to give notice may be required. For example, in applying the reasonableness test in Jones v. Flowers, the Supreme Court concluded an attempted notice letter of an impending tax sale returned as undeliverable was not sufficient to satisfy procedural due process where other reasonable and practicable methods of providing notice were available. The Court said, "We think there were several reasonable steps the State could have taken." Jones v. Flowers, supra, 547 U.S. at 234, 126 S.Ct. at 1718; see also In Interest of Woodard, 231 Kan. 544, 646 P.2d 1105, 1113 (1982) (holding, in reversing termination of parental rights, "We do not question the validity of publication service under proper circumstances but fundamental due process requires a factual showing that, after the exercise of reasonable diligence, other service calculated to give actual notice to the party sought to be served is not practical.").
In Jones v. Flowers, those steps included sending a letter by regular mail as opposed to certified mail, because regular mail could be retrieved even if the intended recipient were not at home at the time of delivery; posting notice on the front door; and addressing the mail to "occupant." However, the Court noted that "[i]t is not [the responsibility of the court] to prescribe the form of service that the [government] should adopt." Jones v. Flowers, supra, 547 U.S. at 234, 126 S.Ct. at 1718 (quoting Greene v. Lindsey, 456 U.S. 444, 455 n. 9, 102 S.Ct. 1874, 1880, 72 L.Ed.2d 249 (1982)).
Therefore, under the Jones principles, even if the department complied with the statutory requirements for service by publication, mother still was denied her right to procedural due process if the department did not take steps reasonably calculated to apprise her of the pendency of the dependency and neglect proceeding, her right to object, and her right to obtain appointed counsel if she was indigent.
I recognize that mother argued in her supplemental brief on the standing issue that the only relevant period was the time from the filing of the dependency and neglect petition to the date of the adjudicatory order. However, that statement does not preclude consideration of the circumstances following the adjudicatory hearing to determine whether her constitutional rights as applied were violated. I also note that mother's constitutional challenge to the publication statute in the trial court did not limit the court's consideration to that specific period.
Here, the trial court authorized the department to provide service of process by publication. It is undisputed that the service of process by publication did not provide mother with actual notice of the dependency and neglect proceeding, that mother did not waive formal notice requirements pursuant to § 19-3-503(2), C.R.S.2006, and that she was in Pueblo when the notice was published in a Huerfano County newspaper.
At the termination hearing, mother testified that after her release from jail on June 10, 2004, she was arrested and served three months in jail during 2004. The caseworker testified that prior to the termination hearing she checked the statewide computer database (ICON), and it appeared that mother was not incarcerated between June 10, 2004, and January 24, 2005. She testified that she did not know mother's whereabouts until April 11, 2005.
Thus, mother was not in contact with the caseworker between June 10, 2004, and April 11, 2005. Nevertheless, there were several reasonable steps the department could have taken during that period to provide mother with constitutionally adequate notice of the proceeding. See Jones v. Flowers, supra. The caseworker could have consulted the ICON database to determine that mother was in custody on January 24, 2005. The caseworker also could have called the probation department or the jail, as she had done to determine the whereabouts of the child's father, and the caseworker could have sent a notice to mother at the Pueblo County Jail, as she previously did when she did not know mother's whereabouts.
Furthermore, the trial court's shelter order permitted the department to use the Federal Parent Locator Service (FPLS) to determine mother's whereabouts. The FPLS provides access to numerous federal *257 and state databases, including the Social Security Administration (SSA) and the Federal Bureau of Investigation (FBI). See http:// www.acf.hhs.gov/programs/cse/newhire/. Thus, the department could have made a request of the FPLS to locate mother. If mother were employed during the relevant time period, her name might have appeared on the SSA database and if she were incarcerated, that fact might have been reflected by the FBI database. In either event, use of the FPLS would not have imposed a significant burden upon the department. See Mullane, supra, 339 U.S. at 317-18, 70 S.Ct. at 659 (noting "impracticable" or "extended" searches for conjectural or future interested parties is not required by due process).
Finally, in April 2005, when mother reestablished contact with the department from the Pueblo County Jail, the department unquestionably could have served mother personally. In addition to sending mother a notice of the foster care review and the questionnaire, the department could have personally served her with the summons and petition for this dependency and neglect proceeding with the concomitant advisement of her legal rights. Although such service would have followed the adjudication of J.C.S. as dependent and neglected, it would have been accomplished one full year before the department filed a petition to terminate parental rights. Personal service at that time was reasonable and practicable because the department knew that mother was incarcerated in the Pueblo County Jail. Therefore, if mother had been personally served in April 2005, it is reasonable to assume she would have asked for a lawyer and would have had a significant period of time to attempt to comply with the treatment plan.
Contrary to the department's contention, I would also conclude for two reasons that mother's notice of the safety plan and shelter hearing did not provide her with adequate notice of the subsequently filed dependency and neglect proceeding.
First, as noted, the safety plan is part of a legal proceeding that is separate from a dependency and neglect petition. Although the safety plan mentions a potential for a future dependency and neglect proceeding, its purpose is not to provide notice of a dependency and neglect proceeding. Second, the caseworker admitted that she did not advise mother of her legal rights in a dependency and neglect proceeding during the telephone conversation with her on the day of the shelter hearing. Therefore, mother was not advised of her right to an attorney or any of the rights and privileges stated in the published summons.
In summary, because service by publication here was authorized despite the department's awareness of mother's temporary jail residence during periods of the dependency and neglect proceeding, I would hold the publication notice was insufficient to satisfy mother's right to procedural due process. Even if the service by publication here complied with the statute, I conclude that procedural due process required the department to make reasonable efforts to locate mother and to serve her personally, especially when it undisputedly knew her location in April 2005. Because mother was not personally served and did not receive actual notice of the published summons, she was unaware of her statutory and constitutional rights, as well as her obligations in the proceeding.
The importance of actual notice in a dependency and neglect proceeding cannot be underestimated. It is reasonable to conclude that had mother received actual notice, she would have requested the appointment of counsel to represent her, the very step she took when she received notice of her right to counsel at the first date scheduled for the termination of parental rights hearing. With the advice of counsel, mother would have been able to better understand the importance of participating in her treatment plan, rather than seeking to avoid the reach of the court because of her pending criminal problems.
Therefore, I would conclude that § 19-3-503(8)(b), as applied, denied mother her constitutional due process right to notice of the dependency and neglect proceeding.
Because I would determine that § 19-3-503(8)(b) is unconstitutional as applied in this *258 case, I would not address whether it is unconstitutional on its face.
NOTES
[*] Taubman, J., would grant.