The PEOPLE of the State of Colorado, In the Interest of R.J.A., a/k/a B.B.B., a Child, Upon the Petition of the La Plata County Department of Social Services, Petitioner–Appellee,

and

Concerning R.B., Respondent–Appellant.

No. 98CA1963.

Colorado Court of Appeals, Div. III.

Nov. 26, 1999.

Certiorari Denied Feb. 28, 2000.

Linda L. Boulder, Special County Attorney, Durango, Colorado, for Petitioner–Appellee.

Stephen A. Filler, Durango, Colorado, for Respondent–Appellant.

Opinion by Judge MARQUEZ.

R.B. (mother) appeals from a judgment entered by the trial court terminating her parent-child legal relationship with her child, R.J.A. We affirm.

R.J.A. was born December 17, 1997. When mother arrived at the hospital to deliver the child, drug screening revealed that she had both alcohol and cocaine in her bloodstream, and the newborn child tested positive for cocaine. The following day, the Department of Social Services (Department) sought and received temporary custody of the child, and the child was placed in a foster home upon his release from the hospital.

On December 23, 1997, a petition in dependency or neglect was filed, and the child was returned to mother. Although a family reunification plan was prepared and signed by mother on the same date, mother did not comply with that plan, and a modified plan was approved by the court on January 8, 1998. The revised plan also proved unsuccessful, and on January 23, 1998, mother was arrested and incarcerated. She tested positive for cocaine and alcohol, and her arrest led to the revocation of a prior probation.

On the basis of mother's admission to an allegation in the petition, the child was adjudicated dependent and neglected on January 26, 1998. At that time, the Department was given temporary custody of the child, and the child was returned to his initial foster care placement.

On February 1, 1998, mother was arrested again, her probation was revoked, and she was sentenced to six months in jail with a stipulation that she would get credit for residential substance abuse treatment. She was subsequently transported to a hospital in Grand Junction for a fourteen-day residential program to be followed by a transitional living program for the remainder of her six-month sentence. On February 5, 1998, the trial court entered a dispositional order approving a treatment plan for mother, which included the residential and transitional living programs in Grand Junction.

On March 18, 1998, she was discharged from the Grand Junction program after testing positive for alcohol and missing curfew. She later walked away from the program and did not return. She was arrested approximately twelve days later in another town and returned to jail where she remained incarcerated until mid-July 1998.

The Department filed a motion to terminate on May 5, 1998, alleging that mother had failed to comply with the treatment plan and that termination was proper under § 19-3-604, C.R.S.1999. In addition, the motion asserted that the matter was subject to the expedited permanency placement provisions pursuant to § 19-1-123, C.R.S.1999.

A termination hearing was held in July 1998. The trial court denied mother's motion for directed verdict in which she asserted an equal protection challenge to § 19-1-123. On August 24, 1998, it issued a written order of termination in which it found by clear and convincing evidence that the treatment plan had not been reasonably complied with, that reasonable efforts had been made by social services agencies which had been unable to rehabilitate her, that her continued substance abuse had rendered her unable or unwilling to give the child reasonable parental care adequate to meet the child's physical, emotional, and mental health needs and conditions, and that she was an unfit parent. The court also found by clear and convincing evidence that mother's conduct or condition was unlikely to change within a reasonable time, giving primary consideration to the physical, mental, and emotional conditions and needs of the child, and that there were no less drastic alternatives to termination. The order included a finding that the child had to be placed in a permanent home within 12 months of his original placement because the county was one in which expedited permanency placement was mandated pursuant to § 19-1-123.

## I.

Mother contends that the trial court erred in determining that an appropriate treatment plan had not been reasonably complied with and had not been successful. She argues that the plan was not realistic because of lack of financial resources and lack of transportation and that the plan should have required long-term residential substance abuse treatment. Thus, she contends that the expectations for her were too high and that the time she had to comply was too short. We disagree.

■ An appropriate treatment plan is defined as one "that is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." Section 19-1-103(10), C.R.S.1999. The appropriateness of a treatment plan must be measured by its likelihood of success in reuniting the family and must be assessed in light of the facts existing at the time of its adoption. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986).

■ It is the parent's responsibility to assure compliance with and success of a treatment plan. Thus, the appropriateness of a treatment plan is not necessarily nullified by its ultimate failure to rehabilitate a parent. *People in Interest of A.H.*, 736 P.2d 425 (Colo.App.1987).

■ The credibility of the witnesses and the sufficiency of the evidence, its probative effect and weight, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

■ Here, the trial court, with record support, made extensive findings applying the criteria now set forth in §§ 19-3-604(1)(a) and 19-3-604(1)(c), C.R.S.1999. Prior to approval of the treatment plan, the trial court had approved two family reunification plans. These plans required mother to maintain contact with the Department, to abstain from drugs and alcohol, to participate in outpatient substance abuse treatment, to have reliable transportation, to participate in a home services program, to undergo a psychiatric evaluation, to participate in counseling, to attend Alcoholics Anonymous meetings, and to follow through with the child's medical appointments. The treatment plan eventually dispensed with most of these requirements, requiring only, as pertinent here, that mother participate in a 14-day inpatient program followed by a 6-month transitional program in a halfway house.

The record reveals that the family reunification plans made specific provision for pay-

ment of the psychiatric evaluation and the counseling requirement. In addition, the evidence shows that the Department offered mother free transportation, which she frequently declined, and that it paid for temporary housing when mother left her boyfriend's residence.

The record further reveals that the substance abuse treatment program required by the treatment plan was the only inpatient program available in the region and that, had mother complied, it would have adequately addressed her problem.

Finally, the record reveals that the failure of the treatment plan was due to mother's lack of motivation rather than to a weakness in the plan itself.

Thus, we conclude, as did the trial court, that the treatment plan was appropriate and that mother did not comply with that plan. *See People in Interest of M.M., supra; People in Interest of A.H., supra.*

## II.

Mother also contends that § 19–1–123, which implements the expedited permanency placement provisions of the Colorado Children's Code on a county-by-county basis over a period of years violates the equal protection guarantees of the Fourteenth Amendment and Colo. Const. art. II, § 25. She argues that children under the age of 6 whose families live in counties that have been designated pursuant to § 19–1–123 must be placed in a permanent home no later than 12 months after their original out-of-home placement, and if the case had been filed in a county not so designated, she would have had up to an additional 6 months within which to comply with the treatment plan. We conclude that mother lacks standing to assert an equal protection violation.

Under § 19–1–123, expedited procedures for the placement of children under the age of six years required by the dependency and neglect provisions were implemented on a county-by-county basis beginning July 1, 1994, to include statewide implementation by June 30, 2004.

Section 19–3–703, C.R.S.1999, provides in pertinent part as follows:

In a county designated pursuant to section 19–1–123, if a child is under six years of age at the time a petition is filed in accordance with section 19–3–501(2), the child shall be placed in a permanent home no later than twelve months after the original placement out of the home unless the court determines that a placement in a permanent home is not in the best interests of the child at that time.

Mother's facial and "as applied" challenges appear to rest on her assertion that parents in designated counties have only 12 months within which to comply with a treatment plan, while those in non-designated counties have up to 18 months to comply.

Here, even if we assume that an 18–month period was applicable in non-designated counties, the record fails to establish that had she lived in a non-designated county, she would have had 18 months to comply. Furthermore, the record fails to establish that, even if mother had been given 18 months to comply, there is any reasonable possibility that she would have complied with the treatment plan.

The trial court in its final order found by clear and convincing evidence that mother's conduct or condition was unlikely to change within a reasonable time. Because the record does not establish that she was adversely affected, she lacks standing to assert an equal protection challenge to the statute.

The proper inquiry on standing is whether a person has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. *Cottonwood Farms v. Board of County Commissioners,* 725 P.2d 57 (Colo.App.1986).

A party does not have standing to challenge the constitutionality of a statute unless that party is directly affected by the alleged constitutional defect. *People v. Kibel,* 701 P.2d 37 (Colo.1985)(to have standing to challenge the constitutionality of state actions a person must be personally adversely affected by the particular constitutional defect asserted); *DiLeo v. Board of Regents,* 196 Colo. 216, 590 P.2d 486 (1978); *Reed v. Dolan,* 195 Colo. 193, 577 P.2d 284 (1978);

see Friends of Chamber Music v. Denver, 696 P.2d 309 (Colo.1985) (if a complaint, along with any evidence that the court in its discretion allows a party to submit, fails to establish any actual harm to the party, then the court must dismiss the case); People in Interest of E.I.C., 958 P.2d 511 (Colo.App. 1998).

Here, in its final order, after hearing extensive testimony including some suggesting that more time might be available in a non-designated county, the court found that mother's substance abuse problems remained untreated. Under the best of circumstances, according to the court, she would need to complete three to six months of controlled, residential treatment, followed by intense patient aftercare. The court also concluded that the best indicator of mother's future success in treatment was her past history, which had demonstrated her continued inability to abstain from the use of alcohol and drugs. The court found that mother's history demonstrated a lack of true motivation and dedication to make the lifestyle changes necessary to meet the child's needs. Although she had always known the case was pending and that it was subject to expedited permanency planning, "she ha[d] chosen to squander the time available to her." The court also found that reasonable efforts had been made by social services agencies, which had been unable to rehabilitate mother. As noted above, had mother complied with the treatment plan, which could have been completed within 12 months, her problem would have been adequately addressed.

■ Further, mother acknowledges that under appropriate circumstances, the parent-child legal relationship may be terminated prior to a 12 or 18–month deadline. See People in Interest of T.S.B., 757 P.2d 1112 (Colo.App.1988)(9 months between adoption of treatment plan and hearing to terminate was a reasonable amount of time in which to comply); People in Interest of R.B.S., 717 P.2d 1004 (Colo.App.1986)(not inappropriate to order termination when time between

adoption of treatment plan and the termination hearing was less than 9 months).

Thus, under the circumstances here, mother lacks standing to assert an equal protection challenge.

The judgment is affirmed.

Judge CASEBOLT concurs.

Judge STERNBERG * dissents.

Judge STERNBERG, dissenting.

I respectfully dissent.

Despite the fact that the mother's legal parent-child relationship with R.J.A. has been terminated, and in disregard of testimony that, had this mother lived in a different county in Colorado, this termination would not have taken place without giving her another opportunity to comply with a new treatment plan, the majority rules sua sponte that the mother lacks standing to raise the constitutional argument, and therefore declines to address the equal protection argument.

The proper inquiry to determine standing is whether a party has suffered injury in fact to a legally protected interest. See e.g. Wimberly v. Ettenberg, 194 Colo. 163, 570 P.2d 535 (1977). In People v. Shepard, 983 P.2d 1 (Colo.1999), the court noted that "[i]n Colorado, we have extended [the] rule of standing to raise the third party claims on a facial challenge from the First Amendment to all fundamental constitutional rights." Even if, for a reason I cannot perceive, the mother in this case is denied standing in her own right, then, under Shepard she can challenge the statute as being facially unconstitutional on behalf of third parties.

In my view, the only real legal issue in this appeal is whether § 19–1–123, C.R.S.1999, which provides for expedited permanency placement in some, but not all counties in Colorado, violates equal protection guarantees of the state and federal constitutions. I agree with the mother's argument that the statute is both unconstitutional on its face, and unconstitutional as applied. See Pace

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1999.

*Membership Warehouse v. Axelson,* 938 P.2d 504 (Colo.1997).

The level of judicial scrutiny in an equal protection challenge varies with the character of the classification and the nature of the rights affected. *People in Interest of M.C.,* 774 P.2d 857 (Colo.1989). If the protected liberty interest is not deemed fundamental in nature, the legislation challenged as impermissibly infringing on that interest is measured by the rational relationship test: whether the statute serves a valid governmental purpose and whether the challenged provisions are reasonably related to that purpose. *People in Interest of M.C., supra.*

When a fundamental liberty interest is involved, legislative classifications are to be examined under a heightened standard, often called the strict scrutiny test. This standard places the burden on the state to show that the statute is supported by a compelling state interest in the least restrictive manner possible. *People in Interest of M.C., supra; Adoption of T.K.J.,* 931 P.2d 488 (Colo.App. 1996). The state cannot meet that burden in this case.

A natural parent has a fundamental liberty interest in the care, custody, and management of his or her child. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982); *B.B. v. People,* 785 P.2d 132 (Colo.1990). Therefore, we must apply the strict scrutiny test to mother's equal protection challenge here. *See People in Interest of E.I.C.,* 958 P.2d 511 (Colo.App. 1998).

Mother's equal protection argument is more than a hypothetical, technical one. A caseworker testified that the department "would have added time" in which to attempt to reunify the parent and child had the case originated in a non-designated county. She explained that if we were in "a non-EPP county I don't think we would be having this hearing today at this point. Because if she had the full 18 months *then she would have had enough time to try again.* That does not mean that she would be successful, but she could try again." (emphasis added)

Because the mother lived in the wrong county, she is being denied the opportunity to preserve a relationship with her child.

In implementing the expedited permanency provisions set forth in the dependency and neglect provisions of the Children's Code on a county-by-county basis, the General Assembly expressly stated the reason for implementation of the scheme in less than all counties of the state is the availability of monies. Preservation of financial resources, administrative convenience, and the reduction of the workload of governmental bodies are not compelling state interests. *Evans v. Romer,* 882 P.2d 1335 (Colo.1994) *aff'd on other grounds,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Consequently, the state interest in financial resources does not constitute a compelling state interest warranting implementation of the procedure in a manner which results in disparate treatment of citizens depending on the county in which they reside.

In *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587, 604 (1979), the Supreme Court explains the basis of equal protection:

> The [equal protection] clause announces a fundamental principle: the State must govern impartially. General rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply with this principle. Only when a governmental unit adopts a rule that has a special impact on less than all the persons subject to its jurisdiction does the question whether this principle is violated arise.

Colorado case law recognizes that equal protection analysis comes into play only when a law has special impact on less than all persons subject to its jurisdiction, and the threshold issue is whether similarly situated persons are subject to disparate treatment. *See People in the Interest of C.B.,* 740 P.2d 11 (Colo.1987) and *Board of County Commissioners v. Flickinger,* 687 P.2d 975 (Colo. 1984). This is such a case.

In adopting the statute in question, the state is not governing impartially, and citizens of the state are subject to disparate treatment depending on their county of resi-

476

dence. The mother in this case is similarly situated to a parent involved in a dependency and neglect proceeding in a non-expedited permanency placement county, but is receiving disparate treatment.

In short—justice by zip code is justice denied.