25CA0578 Peo in Interest of AH 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0578
Arapahoe County District Court No. 23JV16
Honorable Bonnie H. McLean, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.H., a Child,

and Concerning S.V.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Taubman*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Ron Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Alison Bettenberg, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dependency and neglect proceeding, S.V. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with A.H. (the child).  We affirm.

## I.     Background

¶ 2     In January 2023, the Arapahoe County Department of Human Services (Department) filed a petition in dependency and neglect after receiving reports that drugs were being trafficked out of the family home.  The Department further alleged concerns about mother's sobriety and compliance with the restrictions imposed by her criminal cases.

¶ 3     The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother.  The child was placed in the care of maternal grandmother, where she remained throughout the case.  Later, the Department moved to terminate mother's parental rights.  After an evidentiary hearing, the court granted the motion.

## II.     Termination of Parental Rights

### A.     Termination Criteria and Standard of Review

¶ 4     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated

1

dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 5     Whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review a court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### B.     Reasonable Efforts

¶ 6     Mother first argues that the juvenile court erred by finding that the Department made reasonable efforts to reunite the family. Specifically, she asserts that the Department failed when it did not (1) amend mother's treatment plan to include a mental health component; (2) timely investigate and approve kin to supervise family time; and (3) offer services other than family time to mother while she was incarcerated.

## 1. Applicable Law

¶ 7 A department of human services must make reasonable efforts to rehabilitate parents and reunite families before a court may terminate parental rights pursuant to section 19-3-604(1)(c). *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2025. Reasonable efforts means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2025.

¶ 8 In deciding whether a department has satisfied its reasonable efforts obligation, a juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). Whether a department made reasonable efforts "must be measured holistically rather than in isolation with respect to specific treatment plan objectives." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 35. But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment when determining

whether a department has made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

### 2.     Analysis

¶ 9     The juvenile court found that the Department had "gone above and beyond to provide reasonable efforts to assist [mother]" with her treatment plan. We discern no reversible error.

¶ 10     First, we reject mother's argument that the Department failed to provide reasonable efforts when it did not amend her treatment plan to include a mental health provision.

¶ 11     The juvenile court found that the Department reasonably declined to amend the treatment plan because "it [made] sense to not add additional terms and conditions onto [mother's] treatment plan, but to work collaboratively and coordinate with the terms and conditions of her parole release." The record supports the court's findings.

¶ 12     As mother asserts, the caseworker testified that she realized shortly after the treatment plan was adopted that mother might have mental health needs. The caseworker further believed mother's treatment plan needed a mental health component but ultimately never sought to amend it. The caseworker reported that

4

she did not do so because when the issue was raised, mother's legal team had already scheduled mother for a neuropsychological evaluation and thus she believed the concern was already being addressed. Later, after mother was released from incarceration, obtaining mental health services was a part of her parole requirements. The caseworker again did not seek to amend the treatment plan because she wanted to work with mother's parole officer so the treatment plans could be collaborative and to avoid doubling up on mother's required treatment. Mother's engagement in her mental health treatment was "sporadic" and when the termination hearing occurred she had not successfully completed any mental health treatment services.

¶ 13    Notably, mother does not point to any authority specifically obligating the Department to amend her treatment plan, nor are we aware of any. Nevertheless, the record shows mother was offered mental health treatment services through her parole requirements, yet did not fully engage in or complete those services.

¶ 14    Second, mother argues that the Department failed to provide reasonable efforts when it declined to authorize kin supervised family time. Specifically, she asserts that the Department

5

inappropriately restricted family time and refused to authorize kin supervised family time visits, despite kin being willing and able to supervise.

¶ 15    Contrary to mother's assertions, the Department never restricted family time — the court did. Mother had kin supervised family time through roughly the first six months of the case. The court restricted mother's family time to supervised family time after concerns arose for the kin supervisor's safety following a purported argument between mother and the kin supervisor. The court also allowed for changes to family time to be made upon agreement of the Department and the guardian ad litem (GAL). Mother appears to argue that the court is *never* allowed to delegate family time decisions to the Department and the GAL, but this is incorrect. *See* § 19-3-217(2), C.R.S. 2025 (allowing a court to grant "discretionary authority to the department and [GAL] to increase opportunities for additional parent-child contacts . . . without further court order").

¶ 16    While the record shows the Department appeared to be open to allowing kin supervised family time, the caseworker correctly testified that she could not unilaterally make family time changes. The Department and the GAL ultimately never agreed to expand

family time to kin supervised family time given concerns about the kin supervisor's sobriety. Notably, mother refused to have her family time kin supervised by maternal grandmother following her release from incarceration.

¶ 17 Finally, mother contends that the Department failed to provide reasonable efforts when it provided no services, aside from family time, while she was incarcerated.

¶ 18 The record reveals it was the Department of Corrections' noncooperation, not the Department's lack of efforts, that prevented mother from accessing additional services while she was incarcerated. The caseworker attempted to contact mother's counselor while she was incarcerated but never received a response. The caseworker also testified that mother reported she did not qualify for a more intensive treatment plan while she was incarcerated. Importantly, the Department ensured in-person family time was able to continue while mother was incarcerated.

¶ 19 Furthermore, as the juvenile court noted, mother was only incarcerated for roughly six months of the nearly two years the case was open. The court found mother had available to her at least eighteen months when she was not incarcerated during which she

could have engaged and complied with the treatment plan, yet she did not. The record corroborates the court's findings. When the termination hearing occurred, mother had missed most of her urinalysis tests, tested positive for illicit substances as recently as three months earlier, had been recently arrested on felony charges, missed most of her therapy sessions, was noncompliant with her parole, and had never engaged in substance use treatment.

¶ 20    Given this record, we discern no basis for reversal.

## C.    Judicial Notice

¶ 21    Mother next asserts that the juvenile court erred by taking judicial notice of her prior criminal cases because they were irrelevant and constituted improper character evidence. We discern no basis for reversal.

### 1.    Applicable Law

¶ 22    A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute if the fact is either (1) "generally known within the territorial jurisdiction of the court" or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(a)-(b).

¶ 23    "The occurrence of legal proceedings or other court actions are proper facts for judicial notice." *People v. Sena*, 2016 COA 161, ¶ 22 (citing *Doyle v. People*, 2015 CO 10, ¶¶ 2, 11). Because court records are recognized as sources whose accuracy cannot be reasonably questioned, a court may take judicial notice of them. *See id.* at ¶ 24 (noting that the existence of a warrant issued in another jurisdiction "was capable of accurate and ready determination by referring to the statewide court database"); *see also People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004) (noting that a court may take judicial notice of the contents of court records in a related proceeding).

¶ 24    The decision to take judicial notice must be exercised "cautiously because its purpose is to bypass the usual factfinding process." *Quintana v. City of Westminster*, 56 P.3d 1193, 1199 (Colo. App. 2002). We review the court's decision to take judicial notice for an abuse of discretion. *Sena*, ¶ 22. When the juvenile court is the trier of fact, we presume that it disregarded any immaterial or incompetent evidence that may have been introduced. *People in Interest of J.A.S.*, 160 P.3d 257, 261 (Colo. App. 2007). Under these circumstances, we will not disturb the judgment

unless the court could not have reached the result but for the incompetent evidence. *People in Interest of M.M.*, 215 P.3d 1237, 1249-50 (Colo. App. 2009).

## 2. Analysis

¶ 25 At the termination hearing, the Department asked the juvenile court to take judicial notice of five criminal court cases involving mother. Mother objected to four of the five criminal cases because they were "initiated . . . well before the present case involving [the child] opening" and thus were "not relevant to [mother's] status today" or the court's consideration of whether it should terminate parental rights. In response, the Department asserted that they were relevant because they related to the "long-lasting nature of [mother's] condition" and her "ability to lead a legal lifestyle." Rejecting mother's contention, the juvenile court took judicial notice of all the criminal cases.

¶ 26 As an initial matter, the Department and the GAL assert that mother did not preserve her argument relating to improper character evidence because at the hearing she only objected as to relevance. We agree. *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (generally, arguments never presented to,

10

considered by, or ruled upon by a trial court may not be raised for the first time on appeal). Therefore, we address mother's judicial notice argument only as it relates to whether the evidence was relevant.

¶ 27 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 28 We are not persuaded that the court erred in taking judicial notice of mother's convictions for illegal weapon possession, criminal possession of a financial device, unauthorized use of a financial transaction device, and unlawful use of a controlled substance. During the pendency of this case, mother violated her parole conditions related to one of those convictions, which resulted in her incarceration for roughly six months. Mother's criminal history was relevant insofar as it showed her continued struggles to comply with her parole and remain free from incarceration. *See People in Interest of R.J.A.*, 994 P.2d 470, 474 (Colo. App. 1999) (the "best indicator of mother's future success in treatment was her past history").

11

¶ 29    Nevertheless, taking such notice was harmless. *See* C.R.C.P. 61; *People in Interest of M.H-K.*, 2018 COA 178, ¶ 21. Nothing in the record suggests that the juvenile court afforded undue weight to evidence of mother's prior criminal convictions when it terminated her parental rights. Rather than focusing on mother's criminal cases, the court focused on mother's lack of compliance with her treatment plan, her alleged substance use, and her inability to be a protective parent.

¶ 30    Therefore, we will not disturb the judgment.

### D.    Less Drastic Alternatives

¶ 31    Lastly, mother contends that the juvenile court erred in finding there were no less drastic alternatives to termination because (1) termination was not in the child's best interests; (2) the court inappropriately focused on whether grandmother would accept an allocation of parental responsibilities (APR) in contemplation of termination; and (3) the Department failed to investigate mother's cousin for placement.

### 1.    Applicable Law

¶ 32    The juvenile court must consider and eliminate less drastic alternatives before it terminates the parent-child relationship.

*People in Interest of L.M.*, 2018 COA 57M, ¶ 24. Determining whether a less drastic alternative exists is not a separate criterion and is instead "implicit in, and thus intertwined with, the statutory criteria for termination." *Id.*

¶ 33 In considering less drastic alternatives, the court must base its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). A court may consider and weigh various factors in determining the viability of a less drastic alternative, including whether the alternative placement option favors adoption rather than an APR and whether an ongoing relationship with the parent would be beneficial or detrimental to the child. *People in Interest of B.H.*, 2021 CO 39, ¶ 81; *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31.

¶ 34 Ultimately, for a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *A.M.*, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at

13

¶ 32.  We must affirm the court's decision if its findings are supported by the record.  *B.H.*, ¶ 80.

## 2.    Analysis

¶ 35    The juvenile court found that less drastic alternatives had been considered and ruled out, "that APR is not appropriate," and that termination was in the child's best interests.  The record supports the court's findings.

¶ 36    Mother first argues termination was not in the child's best interests because, she alleges, there were concerns about maternal grandmother's ability to care for the child long term given her age and limited financial resources.

¶ 37    However, the court expressly considered this factor and still found it was not a reason to find a less drastic alternative.  The record supports this conclusion.  The caseworker testified that she had no concerns about maternal grandmother's ability to meet the child's needs.  The record additionally showed that the child was bonded to maternal grandmother and was thriving in her care.

¶ 38    Mother's argument that the court inappropriately focused on whether grandmother would accept an APR is also belied by the record.  The court could properly consider whether maternal

14

grandmother favored adoption over an APR in determining whether a viable less drastic alternative existed and did so in its ruling. *See S.N-V.*, 300 P.3d at 919-20.

¶ 39    However, contrary to mother's assertions, maternal grandmother's preference for adoption was only one factor among many that the court considered. The juvenile court also noted the long time the case had been open and found that "[w]hile there was some compliance" with the treatment plan "it was not substantial compliance, and not . . . in any way, shape or form close" to the compliance needed to allow for reunification. Ultimately, the court found that termination was in the child's best interests.

¶ 40    True, the caseworker reported maternal grandmother would not accept an APR. However, the caseworker also testified that she did not believe an APR would be in the child's best interests and about her concerns for such an arrangement given mother's history of hostility and being demanding with maternal grandmother. The caseworker opined that she did not believe mother had been successful with her treatment plan and that mother was not fit. The caseworker noted the case had been open for two years, and further believed it was not in the child's best interests to continue

the case longer. Because of the child's young age when the petition in dependency and neglect was filed, the case was subject to the expedited permanency planning provisions. § 19-1-123(1)(a), C.R.S. 2025. The statutory provisions require a placement "in a permanent home as expeditiously as possible." § 19-3-702(5)(c), C.R.S. 2025.

¶ 41 Lastly, mother contends the Department failed to investigate a maternal cousin as a possible placement, and therefore did not "evaluate a reasonable number of persons suggested to it as possible placements" as the Children's Code requires. *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004).

¶ 42 Mother, however, did not preserve this issue. At the termination hearing, she argued that an APR to maternal grandmother was a less drastic alternative but did not raise the Department's failure to investigate the maternal cousin. Nor did she argue that APR to the maternal cousin was a less drastic alternative. *People in Interest of T.S.*, 781 P.2d 130, 132 (Colo. App. 1989) (an issue raised on different grounds than those argued in the trial court is unpreserved). In civil cases, we generally do not review issues that were not presented to, and ruled on by, the

juvenile court. *People in Interest of M.B.*, 2020 COA 13, ¶ 14. Therefore, we will not address the adequacy of the Department's efforts to investigate the maternal cousin on appeal.

¶ 43 Because the record supports the juvenile court's findings, we may not disturb its conclusion that there were no less drastic alternatives to termination. *See People in Interest of N.A.T.*, 134 P.3d 535, 538 (Colo. App. 2006) (noting that a finding that there were no less drastic alternatives to termination will be upheld on review if it is supported by the evidence).

## III. Disposition

¶ 44 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE TAUBMAN concur.